## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

BRITTANY VONBERGEN, individually
and on behalf of all others similarly situated,

    Plaintiff,

             v.

LIBERTY MUTUAL INSURANCE
COMPANY,

    Defendant.

Case No. 2:22-CV-04880

Judge Gene E.K. Pratter

### DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Liberty Mutual Insurance Company ("LMIC"), by and through its undersigned counsel, respectfully requests that this Honorable Court grant its motion to dismiss Plaintiff Brittany Vonbergen's ("Plaintiff") complaint for failure to show that personal jurisdiction exists over LMIC pursuant to Rule 12(b)(2); failure to allege an injury to support Article III standing pursuant to Rule 12(b)(1); and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

First, Plaintiff fails to show that this Court has personal jurisdiction over LMIC. LMIC is neither incorporated in Pennsylvania nor does it maintain its principal place of business here. Thus, there is no general jurisdiction over LMIC in this state. Further, it is well-settled that a company's operation of a nationally accessible website does not, by itself, subject the company to personal jurisdiction throughout the country. And, Plaintiff's vague allegation about LMIC conducting business in Pennsylvania does not establish specific jurisdiction in this case because she does not allege those activities relate to LMIC's purportedly wrongful actions.

Second, Plaintiff fails to allege that this Court has subject matter jurisdiction over this matter because she did not allege that LMIC caused her a concrete injury that would meet the requirements for Article III standing. Rule 12(b)(1) requires dismissal in such circumstances.

Third, Plaintiff's complaint fails to state a claim upon which relief can be granted. Plaintiff alleges a single claim for violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA"), but her allegations do not meet the requirement of that statutes—specifically, that defendant used a "device" to intercept the "contents" of an "electronic communication," as those terms are defined in WESCA. Accordingly, the Court should dismiss Plaintiff's claim pursuant to Rule 12(b)(6).

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiff's action in its entirety, with prejudice, pursuant to Rules 12(b)(2), 12(b)(1), and/or 12(b)(6).

Dated: January 17, 2023

Respectfully submitted,

Dante A. Marinucci (*pro hac vice* pending)
**BAKER & HOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
dmarinucci@bakerlaw.com

*/s/ Julie Singer Brady*
Julie Singer Brady (*pro hac vice*)
Yameel L. Mercado Robles (*pro hac vice* pending)
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Ste. 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
jsingerbrady@bakerlaw.com
ymercadorobles@bakerlaw.com

Alyse F. Stach
**BAKER & HOSTETLER LLP**
1735 Market Street, Ste. 3300
Philadelphia, PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439
astach@bakerlaw.com

*Counsel for Defendant Liberty Mutual Insurance Company*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

BRITTANY VONBERGEN, individually
and on behalf of all others similarly situated,

    Plaintiff,

        v.

LIBERTY MUTUAL INSURANCE
COMPANY,

    Defendant.

Case No. 2:22-CV-04880

Judge Gene E.K. Pratter

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Dante A. Marinucci (*pro hac vice* pending)
**BAKER & HOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
dmarinucci@bakerlaw.com

Julie Singer Brady (*pro hac vice*)
Yameel L. Mercado Robles (*pro hac vice* pending*)
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Ste. 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
jsingerbrady@bakerlaw.com
ymercadorobles@bakerlaw.com

Alyse F. Stach
**BAKER & HOSTETLER LLP**
1735 Market Street, Ste. 3300
Philadelphia, PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439
astach@bakerlaw.com

*Counsel for Defendant Liberty Mutual
Insurance Company*

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II.  RELEVANT ALLEGED FACTS..........................................................................2

III.  LEGAL STANDARD............................................................................................4

IV.  ARGUMENT ........................................................................................................5

    A.  The Court Does Not Have Personal Jurisdiction Over LMIC. ...............................5

        1.  LMIC is not subject to general jurisdiction in Pennsylvania......................6

        2.  This Court does not have specific jurisdiction over LMIC..........................6

            i.  Plaintiff fails to allege that LMIC purposefully directed session replay software at Pennsylvania. ...........................................6

            ii.  Plaintiff's claims do not relate to activities LMIC purposefully directed at Pennsylvania. ...................................................8

    B.  Plaintiff Does Not Allege An Injury-In-Fact And, Therefore, Does Not Have Standing. ..........................................................................................11

    C.  Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted. ...............15

        1.  Plaintiff fails to allege that LMIC intercepted the "contents" of an "electronic communication." ...................................................................16

        2.  The data LMIC allegedly recorded through session replay software is not an "electronic communication." ...........................................19

        3.  Session replay software is not a "device." .................................................20

V.  CONCLUSION....................................................................................................22

ii

## TABLE OF AUTHORITIES

**Cases** ................................................................................................................... **Page(s)**

*Allen v. Brown,*
   320 F. Supp. 3d 16 (D.D.C. 2018) ...............................................................20

*Asanov v. Gholson, Hicks & Nichols, P.A.,*
   209 F. App'x 139 (3d Cir. 2006) ...........................................................4, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...................................................................................4, 5

*Ballentine v. United States,*
   486 F.3d 806 (3d Cir. 2007)............................................................................4

*Beck v. McDonald,*
   848 F.3d 262 (4th Cir. 2017) .......................................................................12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................5, 7

*Burris v. Weltman, Weinberg & Reis, Co., LPA,*
   No. 1:21-cv-01923, 2022 WL 3580766 (M.D. Pa. Aug. 19, 2022)...........14

*Cahen v. Toyota Motor Corp.,*
   147 F. Supp. 3d 955 (N.D. Cal. 2015) ........................................................14

*Calder v. Jones,*
   465 U.S. 783 (1984)........................................................................................7

*Chant Eng'g Co. Inc. v. Cumberland Sales Co.,*
   No. 20-4559, 2021 WL 848062 (E.D. Pa. Mar. 5, 2021) ................ *passim*

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)........................................................................................4

*Connor v. Whirlpool Corp.,*
   No. 21-cv-14180-WPD, 2021 WL 3076477 (S.D. Fla. July 6, 2021) ........22

*Crowley v. CyberSource Corp.,*
   166 F. Supp. 2d 1263 (N.D. Cal. 2001) ......................................................21

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)........................................................................................6

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.,*
   566 F.3d 94 (3d Cir. 2009)..............................................................................9

*Fischer v. Federal Express Corp.*,
  42 F.4th 366 (3d Cir. 2022) ........................................................................6

*Goldstein v. Costco Wholesale Corp.*,
  559 F. Supp. 3d 1318 (S.D. Fla. 2021) ...............................................18, 19, 20, 22

*Goldstein v. Luxottica of Am., Inc.*,
  No. 21-80546-CIV, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ........................18, 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)....................................................................................5

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
  No. 07-1029, 2007 WL 4394447 (E.D. Pa. 2007) ...............................17, 18, 21, 22

*IMO Indus., Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998).........................................................................7

*In re Zynga Privacy Litigation*,
  750 F.3d 1098, 1107 (9th Cir. 2014) ..........................................................18, 19

*Jacome v. Spirit Airlines, Inc.*,
  No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021).............. *passim*

*Kamal v. J. Crew Grp., Inc.*,
  918 F.3d 102 (3d Cir. 2019).....................................................................12, 13

*M.H. & J.H., ex rel. C.H. v. Omegle.com LLC*,
  No. 20-11294, 2021 WL 1050234 (D.N.J. Mar. 19, 2021) ....................................9

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007).........................................................................7

*Massie v. Gen. Motors LLC*,
  No. 21-787, 2022 WL 534468 (D. Del. Feb. 17, 2022).............................12, 14, 15

*Massie v. General Motors Co.*,
  No.: 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021)..................9, 10

*Matus v. Premium Nutraceuticals, LLC*,
  715 F. App'x 662 (9th Cir. 2018) ..............................................................9, 10

*Minotty v. Baudo*,
  42 So.3d 824 (Fla. Dist. Ct. App. 2010) ...........................................................20

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010).....................................................................................4

iv

*Murphy v. Humboldt Clothing Co.*,
No. 1:20-cv-58, 2021 WL 307541 (W.D. Pa. Jan. 29, 2021) ..................................................8

*Nat'l Expositions, Inc. v. DuBois*,
605 F. Supp. 1206 (W.D. Pa. 1985) ..............................................................................7

*Oyebanji v. Palmetto Vacation Rentals LLC*,
No.: 20-cv-8983, 2021 WL 3732883 (D.N.J. Aug. 20, 2021) .................................................9

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ...............................................................................20, 21

*Potter v. Havlicek*,
No. 3:06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008) ........................................21

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3d. Cir. 2011) .........................................................................................12

*Rocke v. Pebble Beach Co.*,
541 F. App'x 208 (3d Cir. 2013) ....................................................................................9

*Smith v. Facebook*,
262 F. Supp.3d 943 (N.D. Cal. 2017) .......................................................................9, 10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................................................12, 13

*Stranahan Gear Co., Inc. v. NL Indus., Inc.*,
800 F.2d 53 (3d Cir. 1986) ...........................................................................................4

*Swiggum v. EAN Servs., LLC*,
No. 8:21-cv-493-TPB-CPT, 2021 WL 3022735 (M.D. Fla. July 16, 2021) ..........................22

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) .........................................................................................8

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ..................................................................................11, 12, 13

*U.S. v. Swiss American Bank, Ltd.*,
274 F.3d 610 (1st Cir. 2001) ........................................................................................7

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
75 F.3d 147 (3d Cir. 1996) ...........................................................................................5

*Wesley Coll. v. Pitts*,
974 F. Supp. 375 (D. Del. 1997) ..................................................................................21

*Wolstenholme v. Bartels*,
    511 F. App'x 215 (3d Cir. 2013) ........................................................................4

*Zippo Manufacturing Company v. Zippo Dot Com, Incorporated*,
    952 F. Supp. 1119 (W.D. Pa. 1997).................................................................11

**Statutes**

18 Pa. Cons. Stat. § 5702 ........................................................................... *passim*

18 Pa. Cons. Stat. § 5703 ....................................................................................16

18 Pa. Cons. Stat. § 5704 ....................................................................................16

18 Pa. Cons. Stat. § 5725 ....................................................................................16

18 U.S.C. § 2510(8) .............................................................................................18

Fla. Stat. § 934.02 ...................................................................................17, 21, 22

**Rules**

Fed. R. Civ. P. 4(e) ...............................................................................................5

Fed. R. Civ. P. 12(b)(1)....................................................................................4, 11

Fed. R. Civ. P. 12(b)(2)........................................................................................4

Fed. R. Civ. P. 12(b)(6)........................................................................................4

**Other Authorities**

U.S. Constitution Article III............................................................................ *passim*

## I.     INTRODUCTION

This action joins many others seeking to stretch Pennsylvania's anti-wiretapping statute to reach run-of-the-mill software that companies use to monitor activity on their websites to gain an overall understanding of visitor preferences and marketing successes. Specifically, Plaintiff alleges that Defendant Liberty Mutual Insurance Company ("LMIC") violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA"), by using "session replay spyware" to monitor activity on ***its own*** website. Plaintiff does not allege that LMIC intercepted any actual conversations or that it tracked her internet activity beyond her actions while browsing LMIC's website. Nor does she claim that LMIC disclosed any data that it allegedly captured through its use of session replay software. Instead, the sole basis for Plaintiff's claim is the alleged recording of her ***browsing activity*** while she perused LMIC's own website.

To start, this Court should dismiss Plaintiff's complaint for the fundamental reasons that she has not shown that this Court has personal jurisdiction over LMIC or subject matter jurisdiction over her claims. As Plaintiff alleges, LMIC is neither incorporated in Pennsylvania nor does it maintain its principal place of business here. And while Plaintiff alleges she accessed LMIC's website in Pennsylvania, it is well settled that a company's operation of a nationally accessible website, in itself, does not subject it to personal jurisdiction throughout the country. What's more, Plaintiff does not allege an actual injury. The most she can muster is the circular assertion that she was harmed because LMIC violated WESCA. But, as the Supreme Court has recently reiterated, merely alleging a statutory violation is insufficient to confer Article III standing.

Even if Plaintiff could surpass these elemental hurdles (she cannot), this Court should join numerous other courts across the country that have rejected similar attempts to contort anti-wiretapping statutes. To violate WESCA in the way Plaintiff suggests, LMIC must have used a

"device" to intercept the "contents" of an "electronic communication," as those terms are defined in the statute. Plaintiff's allegations miss this mark. She does not allege that LMIC captured the substance of any communication; rather, she claims LMIC tracked her mouse movements and actions while she browsed LMIC's website. What's more, she does not plausibly allege that the software itself is a device. These allegations do not meet the statutory definitions to give rise to a claim for violation of WESCA.

For these reasons, as explained fully below, this Court should dismiss Plaintiff's complaint.

## II.    RELEVANT ALLEGED FACTS

LMIC operates www.libertymutual.com, which is accessible throughout the United States and allows visitors to browse insurance products. (Doc. 1 at ¶¶ 22, 24.) LMIC is a Massachusetts corporation with its principal place of business in Massachusetts. (*Id.* at ¶ 17.)

Plaintiff alleges she visited LMIC's website "on or about March of 2022" while in Pennsylvania. (*Id.* at ¶¶ 16, 23, 25.) She claims that, during her visit, she "filled out an online auto insurance quote form" (*id.* at ¶ 24)—but does not identify any specific information that she provided while on the website (*see generally id.*). In fact, Plaintiff *does not* allege she purchased anything from LMIC, that she received a quote or any product or service from LMIC, or that she has any other relationship with LMIC. (*See generally id.*)

Instead, Plaintiff's sole claim is that LMIC "embedded within its websites' code" session replay software[1] that it used to "intercept" her "mouse movements and clicks, keystrokes, search terms, information and PII inputted into the website, and pages and content viewed while visiting the website." (*Id.* at ¶¶ 3, 30.) Stated differently, Plaintiff alleges that she sent "commands" to

---

[1] Plaintiff defines session replay as "a sequence of computer software instructions." (Doc. 1 at ¶ 30 n.2)

LMIC's servers "instructing [LMIC] what content was being viewed, clicked on, requested and/or inputted by Plaintiff" and that these "commands" were the "communications" LMIC intercepted. (*Id.* at ¶ 26.) And while Plaintiff pays lip service to the idea that certain of these "commands" included her personal information (*see, e.g.*, *id.* at ¶ 36 ("during Plaintiff's visit to Defendant's website, Defendant utilized session replay . . . to intentionally . . . intercept . . . information and PII inputted by Plaintiff")), she never actually alleges what, if any, personally identifiable information she input while browsing LMIC's website (*see generally id.*).

Plaintiff does not allege that any of the "instructions" that allowed her to browse LMIC's website contained the substance of a communication she intended to convey to anyone. (*See generally id.*) Thus, Plaintiff's allegations are merely that LMIC "intercepted" her *browsing activity* on LMIC's public website. (*See id.* at ¶ 8 ("session replay technology utilized by Defendant is intended to record and playback individual *browsing sessions*, as if someone is looking over a Class members' shoulder when visiting Defendant's website") (emphasis added); *id.* at ¶ 28 ("Plaintiff reasonably expected that her visit to Defendant's website would be private and that Defendant would not be tracking, recording, and/or watching Plaintiff as she *browsed and interacted with the website*[.]") (emphasis added); *id.* at ¶ 46 ("Defendant's interception of Plaintiffs electronic communications allowed Defendant to capture, observe, and divulge Plaintiffs personal details, interests, browsing history, queries, and habits as she *interacted with and browsed Defendant's website*.") (emphasis added); *id.* at ¶ 2 ("the use of 'session replay' spyware [] allowed Defendant to watch and record Plaintiff's and the Class members' *visits to its websites*") (emphasis added); *id.* at ¶ 5 ("a session replay [] is essentially a video of a Class member's entire *visit to Defendant's website*") (emphasis added); *id.* at ¶ 45 ("The electronic data communications were

3

not only intercepted and stored, but could also be used by Defendant to create a video playback of *Plaintiffs visit to the website*.") (emphasis added).)

Finally, Plaintiff does not allege that she suffered any actual harm. In conclusory fashion, she asserts that LMIC's alleged conduct caused her and the putative class "injuries" because it was a "violation[ ] of their substantive legal privacy rights under WESCA," was "an "invasion of their privacy," caused "the "potential"—though not actual—"exposure of their private information," and was an "invasion of their rights to control information concerning their person." (*Id.* at ¶¶ 14, 64.) Nothing more. The complaint should be dismissed.

## III.   LEGAL STANDARD

Under Rule 12(b)(2), Plaintiff bears the burden "of showing that personal jurisdiction exists." *Wolstenholme v. Bartels*, 511 F. App'x 215, 218 (3d Cir. 2013). To do so, she must "establish[ ] with reasonable particularity sufficient contacts between the defendant[ ] and . . . the forum state[.]" *Asanov v. Gholson, Hicks & Nichols, P.A.*, 209 F. App'x 139, 141 (3d Cir. 2006). Reliance on "bare pleadings alone" will not suffice. *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 58-59 (3d Cir. 1986) (citation omitted).

"A motion to dismiss for want of standing is [] properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). To meet the threshold standing requirement, Plaintiff bears the burden of showing "an injury" that is "'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

Under Rule 12(b)(6), only complaints that "state[ ] a plausible claim for relief survive[ ] a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And while courts accept material allegations as true and resolve factual inferences in a plaintiff's favor, they reject bald assertions

or inferences of fact, as well as "threadbare" legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). Ultimately, "where [] well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

## IV.   ARGUMENT

### A.   The Court Does Not Have Personal Jurisdiction Over LMIC.

The Court should dismiss Plaintiff's complaint because it does not have personal jurisdiction over LMIC. "A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (citing Fed. R. Civ. P. 4(e)). Pennsylvania's long-arm statute "is coextensive with the limits placed on the states by the federal Constitution." *Id.* Federal courts in Pennsylvania therefore look to federal law to determine whether personal jurisdiction exists. *Id.* In order to establish personal jurisdiction, Plaintiff must show that LMIC "made constitutionally sufficient 'minimum contacts' with" Pennsylvania. *Id.* (citation omitted).

Sufficient minimum contacts come in two forms: general jurisdiction or specific jurisdiction. "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction, on the other hand, depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

Plaintiff does not allege and cannot establish either general or specific jurisdiction.

1.     **LMIC is not subject to general jurisdiction in Pennsylvania.**

"For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as 'at home,' which generally is restricted to the corporation's state of incorporation or the state of its principal place of business." *Fischer v. Federal Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("paradigm" basis for general jurisdiction over company is its state of incorporation and principal place of business). Plaintiff alleges that LMIC is incorporated under the laws of Massachusetts and that it maintains its principal place of business in Massachusetts. (Doc. 1 at ¶ 17.) And, she does not allege any exceptional circumstances that would render LMIC "essentially at home" in Pennsylvania. Thus, Plaintiff's allegations do not support a finding that the Court has general jurisdiction over LMIC.

2.     **This Court does not have specific jurisdiction over LMIC.**

"[S]pecific jurisdiction allows the court to hear claims that arise from or relate to the party's contacts with the forum state, such that the defendant should reasonably anticipate being haled into court in that forum." *Chant Eng'g Co. Inc. v. Cumberland Sales Co.*, No. 20-4559, 2021 WL 848062, at *3 (E.D. Pa. Mar. 5, 2021). Courts use a three-part test to analyze this question: (1) whether defendant "purposefully directed his activities at the forum"; (2) whether **_plaintiff's claim_** "arise[s] out of or relate[s] to at least one of those purposefully directed activities"; and (3) if the first two requirements are met, whether there are "additional factors to ensure that the assertion of jurisdiction [] comport[s] with fair play and substantial justice." *Id*. Plaintiff's bare allegations do not meet the first two elements of this test so as to consider the third.

i.     *Plaintiff fails to allege that LMIC purposefully directed session replay software at Pennsylvania.*

District courts in Pennsylvania apply the "*Calder* effects test" to evaluate whether intentional conduct was directed at a forum. *Id.* at *4 (citing *Calder v. Jones*, 465 U.S. 783 (1984));

*see also U.S. v. Swiss American Bank, Ltd.*, 274 F.3d 610, 624 (1st Cir. 2001) ("*Calder* addressed purposeful availment[.]"). Under the *Calder* effects test, courts analyze whether "a plaintiff shows that: (1) the defendant committed an intentional act; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that act; and (3) the defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the activity." *Chant*, 2021 WL 848062, at *5. Important here, "[t]he *Calder* effects test is not satisfied by the 'mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there.'" *Id.* (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)). "Rather, a plaintiff must 'point to other actions that adequately demonstrate that the defendants targeted (or 'expressly aimed their conduct at) the forum." *Id.* "[A]bsent some conduct by defendant directed at Pennsylvania rather than simply directed at plaintiff, Pennsylvania is not a reasonably foreseeable forum." *Id.*

Here, Plaintiff fails to offer any facts suggesting that LMIC's use of session replay software was aimed or targeted at Pennsylvania. Instead, she simply alleges that LMIC intercepted her communications while she was in Pennsylvania. But such a conclusory allegation is insufficient as a matter of law. *Twombly*, 550 U.S. at 555; *see also Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007) ("Because [plaintiff] has not shown defendants expressly aimed their conduct at Pennsylvania, we will affirm the District Court's grant of summary judgment."); *Nat'l Expositions, Inc. v. DuBois*, 605 F. Supp. 1206, 1212 (W.D. Pa. 1985) ("Plaintiffs' papers are devoid of any factual statements demonstrating personal jurisdiction over [defendant], but instead contain bare, unsubstantiated allegations."); *Chant*, 2021 WL 848062, at *5 ("[A] plaintiff must 'point to other

actions that adequately demonstrate that the defendants targeted (or 'expressly aimed their conduct at) the forum.'").

> ii.      *Plaintiff's claims do not relate to activities LMIC purposefully directed at Pennsylvania.*

Plaintiff's remaining jurisdictional allegations amount to the argument that LMIC knows its website is accessible in Pennsylvania and, in a broad generality, that LMIC markets products in and accepts sales from Pennsylvania. (Doc. 1 at ¶ 18.) Neither of these arguments are sufficient to establish the relatedness necessary between Plaintiff's claim and LMIC's "purposefully directed activities." *Chant*, 2021 WL 848062, at *3.

First, the fact that Pennsylvania residents can visit LMIC's nationally accessible website does not establish specific jurisdiction—or else all companies operating national websites could be sued in every state. *Chant*, 2021 WL 848062 at *5 (the Third Circuit "has emphasized . . . that 'the mere operation of a commercially interactive web site should not subject the operators to jurisdiction anywhere in the world'") (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)). As the court found in *Murphy v. Humboldt Clothing Co.*, allegations that a defendant "could knowingly interact, or engage . . . with residents of Pennsylvania" through its website are insufficient to establish jurisdiction because the mere "*capab*[*ility*] of doing business with Pennsylvania customers" does not mean defendant "intentionally did so." No. 1:20-cv-58, 2021 WL 307541, at *5 (W.D. Pa. Jan. 29, 2021) (collecting cases).

Furthermore, a plaintiff's "attempts to establish the requisite minimum contacts through his own efforts to utilize Defendant's website" from a certain forum are "also insufficient . . . [because] personal jurisdiction must arise from the defendant's own purposeful targeting of the forum state, not the unilateral activities of others." *Id*. at *6 (citing *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009)); *see also M.H. & J.H., ex rel.*

*C.H. v. Omegle.com LLC*, No. 20-11294, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021) (no "indicia of purposeful direction" to forum where website is "generally accessible;" "basic awareness that residents of a specific forum use a website is insufficient; the facts must demonstrate that the website *targeted* those users"); *Oyebanji v. Palmetto Vacation Rentals LLC*, No.: 20-cv-8983, 2021 WL 3732883, at *3 (D.N.J. Aug. 20, 2021) (colleting cases).

The court's decision in *Massie v. General Motors Co.*, a case with similar allegations regarding the use of session replay software on a company's website, is on point. No.: 1:20-cv-01560, 2021 WL 2142728, at *1 (E.D. Cal. May 26, 2021) (hereinafter "*Massie I*"). There, the court held that personal jurisdiction did not exist in California simply because the plaintiff alleged that "GM knew and foresaw that the wiretapping would impact Californians." *Id.* at *5. The court agreed with GM that "operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction" over claims related to information collected on that website. *Id.* at *6.

As the *Massie I* court recognized, if Plaintiff's allegations were sufficient for specific jurisdiction, "every online advertiser worldwide [could] be haled" into every state. 2021 WL 2142728, at *6 (quoting *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018)); *see also Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 211-12 (3d Cir. 2013) ("[M]ere operation of a commercially available web site should not subject the operator to jurisdiction anywhere in the world."); *Smith v. Facebook*, 262 F. Supp.3d 943, 952 (N.D. Cal. 2017) ("Under Plaintiffs' theory, every website operator that embeds one of these tools could be haled into court where the third-party company resides. Personal jurisdiction cannot reasonably stretch so far.").

Therefore, it is not enough for Plaintiff to simply claim that LMIC targeted Pennsylvania by operating a website it knew Pennsylvania citizens (along with the citizens of every other state)

would use. Noticeably absent from the complaint are allegations that LMIC's servers are located in Pennsylvania, that LMIC's decision to implement session replay software was made in Pennsylvania as opposed to its headquarters in Massachusetts, that LMIC's IT personnel responsible for maintaining the website are located in Pennsylvania, or even that the session replay software itself originated from Pennsylvania or was implemented to target Pennsylvanians.

The fact that LMIC generally markets products in Pennsylvania and that people can make online purchases from LMIC in the state does not establish specific jurisdiction either. Plaintiff does not allege that she received marketing material directing her to LMIC's website while she was in Pennsylvania—or that she ever purchased a product from LMIC while in Pennsylvania, let alone that her doing so was the impetus of this lawsuit. In fact, Plaintiff does not allege that LMIC's marketing or sale of goods to Pennsylvanians has anything to do with her claims.

Plaintiff also cannot use the fact that LMIC does business with other people in Pennsylvania to establish specific jurisdiction over her claims. In *Massie I*, for example, the fact that GM received profits from California website visitors was not sufficient to establish personal jurisdiction because the claims at issue arose from and related to "session recording software allegedly installed on GM's nationally accessible websites" and not any business conducted by GM through the website. 2021 WL 2142728, at *6. The law simply does not support a finding of specific jurisdiction where LMIC's alleged activity in the forum state is wholly unrelated to the alleged wrongful actions that form the basis of Plaintiff's claim. *See id.*; *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) ("Matus's claims 'arise from' only the online activities that Premium aimed at the entire world. If Premium can be haled into California merely on the basis of its universally accessible website, then, under Matus's proposed

rule, it can be haled into every state, and respectively, every online advertiser worldwide can be haled into California.").[2]

Because Plaintiff failed to allege with "reasonable particularity" the "sufficient contacts" needed between LMIC's use of session replay software and Pennsylvania, the Court should dismiss the complaint for lack of personal jurisdiction. *Asanov*, 209 F. App'x at 141.

### B.    Plaintiff Does Not Allege An Injury-In-Fact And, Therefore, Does Not Have Standing.

Plaintiff fails to allege that she suffered a concrete injury that satisfies the standing requirements of Article III of the U.S. Constitution. This fatal flaw requires the Court to dismiss Plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1).

Federal courts "do not adjudicate hypothetical or abstract disputes" nor do they "possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Article III requires that a plaintiff show that "he suffered an injury in fact that is concrete, particularized, and actual or imminent," "that the injury was likely caused by the defendant," and "that the injury would likely be redressed by judicial relief." *Id.* For an injury to be "concrete" it must be "real, and not abstract." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S.

---

[2] In the context of websites, courts often apply the *Zippo* sliding-scale approach where "the likelihood of establishing personal jurisdiction is 'directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'" *Chant*, 2021 WL 848062, at \*5 (quoting *Zippo Manufacturing Company v. Zippo Dot Com, Incorporated*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)). "On one end of the scale (where personal jurisdiction can be established) are situations where a defendant uses an interactive commercial website to actively transact business with residents of the forum state. At the other end of the scale (where personal jurisdiction is lacking) are situations where a passive website merely provides information that is accessible to users in the forum state). When a case falls between these two extremes, courts examine the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* (cleaned up). But the *Zippo* approach does not excuse the requirement that Plaintiff's claim "arise out of or relate to" the activities LMIC purposely directs at Pennsylvania. *Id.* at \*3. Thus, even if Plaintiff can meet the *Zippo* test, the Court still lacks personal jurisdiction because her claim relates to session replay software not sales made through LMIC's website.

330, 340 (2016)). At the pleading stage, plaintiffs must "clearly allege facts demonstrating" each element of Article III standing, including a concrete injury. *Spokeo*, 578 U.S. at 338.

Here, Plaintiff conclusively alleges that she and putative class members suffered harm in the form of "violations of their substantive legal privacy rights under the WESCA, invasion of privacy, invasion of their rights to control information concerning their person, and/or the exposure of their private information." (Doc. 1 at ¶ 64.) But these abstract and conclusory allegations of purported injuries are precisely the type of indefinite harms that courts reject as insufficient to establish standing. *See, e.g.*, *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d. Cir. 2011) ("[C]omplainant must allege an injury . . . that is 'distinct and palpable' as distinguished from merely 'abstract' [and] 'conjectural.'"); *Beck v. McDonald*, 848 F.3d 262, 271-72, 275-76 (4th Cir. 2017) (no standing where alleged injury to privacy interests was too speculative).

First, it is well settled that simply alleging that a defendant violated a statute does not satisfy Article III. The Supreme Court has "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 141 S. Ct. at 2205. That is, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*; *see also Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 113-17 (3d Cir. 2019) ("bare procedural violation" of statute "[does] not create Article III standing"); *Massie v. Gen. Motors LLC*, No. 21-787, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (hereinafter "*Massie II*") ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue . . . in federal court."). This rule means Plaintiff's claim that LMIC "violat[ed] . . . [her] substantive legal privacy rights under the WESCA" is not an injury-in-fact so as to establish standing.

Plaintiff's other supposed injuries fare no better at establishing standing. A concrete injury that would meet the requirements of Article III is "any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2206. Plaintiff does not allege that LMIC caused any physical or monetary harm. She must therefore establish that her other alleged "'harm[s] ha[ve] a close relationship to a harm that has traditionally been regarded as providing a basis' for a common law action." *Kamal*, 918 F.3d at 114 (quoting *Spokeo*, 578 U.S. at 341). She cannot do so.

Plaintiff does not sufficiently allege an injury, as the Third Circuit's decision in *Kamal* illustrates. There, the plaintiff alleged the defendant violated a federal statute by printing too many digits of his credit-card number on a receipt. *Id.* at 106. He claimed two injuries: "'the printing of the prohibited information itself and the harm caused by such printing increasing the risk of identity theft.'" *Id.* at 108. The Third Circuit held that neither was an injury-in-fact. *Id.* at 106. In doing so, the court rejected the argument that the "injury [was] analogous to common law privacy torts and an action for breach of confidence." *Id.* at 114. After considering numerous privacy torts, the court held that the plaintiff's alleged "injury does not have the requisite 'close relationship' with these actions because he does not allege disclosure of his information to a third party." *Id.*

The same is true here. Plaintiff concludes that she has suffered an "invasion of privacy," an "invasion of [her] right[] to control information concerning [her] person, and/or the exposure of [her] private information." (Doc. 1 at ¶ 64.) But Plaintiff alleges only that LMIC recorded her browsing activity on LMIC's website (*id.* at ¶ 26)—not that she communicated with LMIC about sensitive information that LMIC disclosed to a third party. This is simply not enough to rise to the level of concrete harm necessary to open the doors to federal court. *See Burris v. Weltman, Weinberg & Reis, Co.*, LPA, No. 1:21-cv-01923, 2022 WL 3580766, at *8 (M.D. Pa. Aug. 19,

2022) ("debt collector's disclosure of a consumer's debt-related information to a mail vendor does not establish the type of harm associated with a close historical or common-law analogue, [so] Plaintiff has suffered no concrete injury-in-fact" and "lacks Article III standing"); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 972-73 (N.D. Cal. 2015) ("Despite the California Class plaintiffs' assertion that they 'maintain a legally protected privacy interest in their personal data, plaintiffs have not identified a concrete harm from the alleged collection and tracking of their personal information sufficient to create injury in fact.'").

*Massie II* is on point. There, the District of Delaware dismissed for lack of standing a class action complaint based on defendants' alleged use of session replay software. 2022 WL 534468, at *2-6. In *Massie II*, as here, the plaintiffs alleged statutory claims because "Session Replay software records website users' mouse movements, clicks, and keystrokes, producing 'video-accurate renders of real visits' to websites." *Id.* at *1-2. And to support their alleged standing, the *Massie II* plaintiffs, like Plaintiff here, "analogize[d] their injury to an invasion of privacy or a harm to their interest in controlling their personal information." *Id.* at *3.

But the *Massie II* court rejected that argument because the "[p]laintiffs d[id] not allege that any of their information collected by the Session Replay software was personal or private within the common law understanding of a privacy right." *Id.* The court further explained why cases finding that some intangible harms were concrete did not support a finding of standing in the session replay context. That's because: (1) "GM only recorded [p]laintiffs' browsing while [p]laintiffs were on GM's own website, GM obtained no personal information from [p]laintiffs, and [p]laintiffs make no allegations that GM attempted to sell or monetize the information it collected in any way," (2) "[p]laintiffs have not provided a basis for the conclusion that the information GM collected was 'legally protected,' nor have they alleged any unlawful disclosure'

14

of such information," (3) "[p]laintiffs have not alleged any disclosure of any of their private information," (4) "none of [p]laintiffs' personal information is implicated by the allegations they make" and "[they] fail to explain how either GM's or Decibel's possession of anonymized, non-personal data regarding their browsing activities on GM's website harms their privacy interests in any way," and (5) "[p]laintiffs do not allege any collection of personal information" like "name, email, phone number, and address, addresses of friends and relatives, and personal and private messages that have been sent to friends and relatives of that nature." *Id.* at *3-5.

Here, like in *Massie II*, Plaintiff alleges LMIC recorded her browsing activity *only* on its website. (*See, e.g.*, Doc. 1 at ¶ 26.) Plaintiff has not alleged that LMIC sold recorded data; that LMIC's recordings included legally protected information; that LMIC disclosed any of her recorded interactions to a third party; that LMIC retained any of her information in a way that would result in a concrete injury; or that LMIC recorded her private messages. (*See generally id.*)

In short, Plaintiff does not allege anything other than a purported violation of WESCA. Plaintiff cannot manufacture a concrete injury by alleging that LMIC violated WESCA and, therefore, that her amorphous "privacy" was invaded. The Court should dismiss Plaintiff's complaint for lack of Article III standing.

### C.    Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted.

Even if this Court had personal jurisdiction over LMIC (it does not) and Plaintiff had asserted a concrete injury (she has not), this Court should dismiss Plaintiff's complaint because the alleged conduct at issue does not violate WESCA. The statute prohibits the intentional interception, use, or disclosure of a "wire, electronic, or oral communication" unless one of several exceptions apply. *See* 18 Pa. Cons. Stat. §§ 5703, 5704. Here, Plaintiff alleges that LMIC unlawfully "intercept[ed]" her "communications" with LMIC's website via session replay software. (Doc. 1 at ¶¶ 3, 36.) In other words, Plaintiff's claim is limited to the allegation that

LMIC tracked Plaintiff's activity on its *own public website.* (*See id.*) Accordingly, Plaintiff's lawsuit turns on whether her interactions with LMIC's website constituted "electronic communications" whose "contents" were unlawfully "intercepted" by a "device" within the meaning and scope of the statute. *See* 18 Pa. Cons. Stat. §§ 5702, 5703, 5725. They do not. Therefore, Plaintiff does not have a claim for a violation of WESCA.

### 1. Plaintiff fails to allege that LMIC intercepted the "contents" of an "electronic communication."

Plaintiff alleges that LMIC tracked her "mouse clicks and movements, keystrokes, search terms, information and PII inputted by Plaintiff, pages and content viewed by Plaintiff, scroll movements, and copy and paste actions" on LMIC's website. (Doc. 1 at ¶ 26.) Those allegations do not establish the interception of the "contents" of an electronic communication. (Doc. 1 at ¶ 26.)

An "intercept" under WESCA is the "[a]ural or other acquisition of the **contents** of" Plaintiff's communications. 18 Pa. Cons. Stat. § 5702 (emphasis added). WESCA defines "contents" to mean "information concerning the substance, purport, or meaning of [a] communication." *Id*. This narrow definition evidences that WESCA protects the *substantive* aspects of private communications, like a conversation between two people. In other words, "contents" does not include tangential pieces of computer metadata that the Pennsylvania legislature never envisioned when passing WESCA decades ago. *Cf. Jacome v. Spirit Airlines, Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, *3 (Fla. Cir. Ct. June 17, 2021) ("Congress did not intend for the Federal Wiretap Act to extend to the use of commonplace analytics software to improve a website browsers' experience[,] and the [Florida Security of Communications Act], being modeled after the Federal Wiretap Act, likewise does not extend to the use of commonplace analytics software to improve a website browsers' experience."); *Ideal Aerosmith, Inc. v.*

*Acutronic USA, Inc.*, No. 07-1029, 2007 WL 4394447, at *3 (E.D. Pa. 2007) ("The [WESCA] tracks the language set forth in the Federal Act, and has been interpreted identically.").

The basic browsing actions that Plaintiff alleges were intercepted by LMIC on its own website do not meet this definition of "contents." Indeed, Plaintiff really alleges only the tracking and recording of her *actions* on LMIC's website—not any intended messages. (*See, e.g.*, Doc. 1 at ¶ 28 ("Plaintiff reasonably expected that her visit to Defendant's website would be private and that Defendant would not be tracking, recording, and/or watching Plaintiff as she *browsed and interacted with* the website[.]") (emphasis added).)

Numerous courts that have considered similar wiretapping claims based on the use of session replay software on commercial websites have dismissed such claims. State and federal courts in Florida applying Florida's analogue to WESCA—the Florida Security of Communications Act, Chapter 934 of Florida Statutes (the "Florida Wiretap Act")—have consistently held that the same browsing actions Plaintiff complains of here are not "contents" of electronic communication.[3] *Jacome*, 2021 WL 3087860 at *4 ("mouse clicks and movements, keystrokes, search terms, information inputted by [p]laintiff, and pages and content viewed by [p]laintiff" are "precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act *or any of its state analogs because it does not convey the substance or meaning of any message*") (emphasis added); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, *2 (S.D. Fla. Aug. 23, 2021), *report and*

---

[3] The definition of "contents" in WESCA is substantively the same as in the Florida Wiretap Act. *Compare* 18 Pa. Cons. Stat. § 5702 ("'Contents.' As used with respect to any wire, electronic or oral communication, is any information concerning the substance, purport, or meaning of that communication.") *with* Fla. Stat. § 934.02(7) ("'Contents,' when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication.").

*recommendation adopted*, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) (same conclusion in case involving session replay software); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1320 (S.D. Fla. 2021) (same).

The Ninth Circuit's decision in *In re Zynga Privacy Litigation* is instructive as to the intended purpose and meaning of the term "contents" in the context of the Federal Wiretap Act, which defines "contents" in substantively the same way as WESCA. 750 F.3d 1098, 1107 (9th Cir. 2014).[4] There, the Ninth Circuit held that the plaintiff's Facebook ID, which "functions as a 'name' or 'subscriber number or identity,'" and "location of a webpage a user is viewing [that] functions like an 'address'" were not protected "contents" sufficient to survive a motion to dismiss. *Id.* The Ninth Circuit explained: "There is no language in [the Federal Wiretap Act] equating 'contents' with personally identifiable information." *Id.* That is because the definition of "contents" is intended to mean "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')." *Id.* at 1106.

Here, Plaintiff portrays her interactions with LMIC's website as "instructions to [LMIC's] computer servers" in an attempt to convert her website-browsing activity into substantive communications. (Doc. 1 at ¶ 26.) But her characterization falls short because, at bottom, her interactions with LMIC's website were simply "commands" that are "equivalent to 'dialing, routing, addressing, or signaling information" that "courts routinely deem non-contents." *Costco*, 559 F. Supp. 3d at 1322 (citing cases). Simply put, Plaintiff's purported intent to "communicate"

---

[4] *Compare* 18 Pa. Cons. Stat. § 5702 ("'Contents.' As used with respect to any wire, electronic or oral communication, is any information concerning the substance, purport, or meaning of that communication.") *with* 18 U.S.C. § 2510(8) ("'[C]ontents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication."); *see also Ideal Aerosmith*, 2007 WL 4394447, at *3 ("The [WESCA] tracks the language set forth in the Federal Act, and has been interpreted identically.").

with LMIC's website "does not mean [her] communications revealed any substance." *Id.* Nor does her allegation that she "filled out an online auto insurance quote form" save her WESCA claim. Plaintiff does not say what information she "filled out" and, therefore, has not alleged any "content" that was "intercepted." And even if Plaintiff had input personal information in a quote form (Doc. 1 at ¶26 (conclusively referencing "PII inputted by Plaintiff")), that is not enough to save her claim because—as the Ninth Circuit explained—there is nothing in the definition of "contents" that equates it to personally identifiable information. *In re Zynga,* 750 F.3d at 1106.

The Court should follow this growing body of law and dismiss Plaintiff's WESCA claim because she cannot allege that LMIC intercepted the "contents" of a protected communication.

> ### 2.   The data LMIC allegedly recorded through session replay software is not an "electronic communication."

The Court should also dismiss Plaintiff's WESCA claim because the data she alleges LMIC tracked and/or recorded was not "electronic communications." WESCA specifically exempts from the definition of "electronic communication" any "communication from a tracking device," which is "[a]n electronic or mechanical device which permits only the tracking of the movement of a person or object." 18 Pa. Cons Stat. § 5702. What Plaintiff ostensibly identifies as the data that the session replay software captured is no more than her *activity—i.e.*, movements—on LMIC's website: "mouse *clicks* and *movements*, keystrokes, search terms, information and PII inputted by Plaintiff, pages and content *viewed* by Plaintiff, scroll *movements*, and copy and paste *actions*." (Doc. at ¶ 1 (emphasis added).)

Courts considering the use of session replay software in cases filed under Florida's parallel to WESCA have held that information concerning mouse clicks and other website commands relate solely to a plaintiff's virtual online movement and are not communications. In *Jacome*, the court found session replay software "which tracks a website browser's movements" is

"definitionally excluded from the term 'electronic communications.'" 2021 WL 3087860 at *3. And, in *Costco*, the court dismissed a case asserting similar claims because the "mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record[ing] information Defendant could have obtained through a security camera at a brick-and-mortar store." 559 F. Supp. 3d at 1321.[5]

The Court should dismiss Plaintiff's complaint, as the information Plaintiff alleges LMIC collected does not constitute an "electronic communication."

### 3.     Session replay software is not a "device."

Plaintiff's WESCA claim should also be dismissed because session replay software is not a "device" that "intercepts" communications. *See* 18 Pa. Cons. Stat. § 5702. An "intercept" is an "acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other *device*." *Id.* (emphasis added). "The WESCA's use of 'intercept' thus reduces to acquiring certain communications using a device." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 126 (3d Cir. 2022). "Device," in turn, means "[a]ny device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic, or oral communication" other than things like telephone or telegraph instruments, hearing aids, and call-center equipment used for training or quality control. *See* 18 Pa. Cons. Stat. § 5702.

---

[5] Speculating plaintiffs in other similar actions have also argued that security surveillance in brick-and-mortar stores violates anti-wiretapping statutes. But "silent surveillance videos of the [plaintiff's] physical movements had no content because they did not convey the substance of the particular communication." *Minotty v. Baudo*, 42 So.3d 824, 832 (Fla. Dist. Ct. App. 2010); *Allen v. Brown*, 320 F. Supp. 3d 16, 38 (D.D.C. 2018) ("Indeed, *every* federal appeals or district court to have considered the question has concluded that silent video surveillance is not covered by the federal wiretapping statute." (emphasis in original)).

No Pennsylvania court has extended the meaning of "device" under WESCA to include *non-physical*, intangible things such as software code or website cookies.[6] And, in fact, a court in this District squarely addressed what constitutes a "device," concluding that a "drive or server on which an e-mail is received does not constitute a device for purposes of the Wiretap Act." *Ideal Aerosmith, Inc.*, 2007 WL 4394447, at *4 (citing *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (concluding same); *Wesley Coll. v. Pitts*, 974 F. Supp. 375, 384 (D. Del. 1997) (stating that, in enacting federal anti-wiretapping statute, "Congress had in mind more surreptitious threats to privacy than simply looking over one's shoulder at a computer screen")).

Notably, both state and federal courts in Florida addressing this very issue have concluded that session replay software is not a "device" under the parallel Florida Wiretap Act.[7] In holding that the plaintiff did not allege the use of a device under that statute, the *Jacome* court found it persuasive that "other courts have held that software, email servers, and drives do not constitute devices under the wiretapping statutes." 2021 WL 3087860, at *5 (citing *Potter v. Havlicek*, No. 3:06-CV-211, 2008 WL 2556723, at *1, *8 (S.D. Ohio June 23, 2008) (dismissing wiretap claim because "device" did not encompass computer software that "automatically record[ed] and store[d] . . . all activity of the [computer's user]")). The court's reasoning in *Jacome* has been widely adopted by federal courts in Florida. *Luxottica of Am.*, 2021 WL 4093295, at *2 (adopting the *Jacome* decision); *Costco*, 559 F. Supp. 3d at 1320 (agreeing with *Jacome* and decisions adopting the same); *Connor v. Whirlpool Corp.*, No. 21-cv-14180-WPD, 2021 WL 3076477, at *2 (S.D.

---

[6] Because this issue was not argued on appeal in *Popa*, the Third Circuit "assume[d] for purposes of [its] opinion," but without deciding, that session replay code was a "device." 52 F.4th at 131 n.8. Therefore, the *Popa* decision did not address this element vital to establishing a claim for violation of WESCA.

[7] The definition of "device" in WESCA and in the Florida Wiretap Act are substantively the same. *Compare* 18 Pa. Cons. Stat. § 5702 *with* Fla. Stat. § 934.02(4).

Fla. July 6, 2021) (adopting and incorporating the *Jacome* decision); *Swiggum v. EAN Servs., LLC*, No. 8:21-cv-493-TPB-CPT, 2021 WL 3022735, at *2 (M.D. Fla. July 16, 2021) (adopting analysis in *Jacome*). The reasoning in *Jacome* is equally applicable here.

This Court should follow *Jacome*, find the sound reasoning of *Ideal Aerosmith* and the decisions of the Florida federal courts applying the analogous Florida Wiretap Act persuasive, and hold that Plaintiff has failed to allege that LMIC used a "device" to "intercept" her electronic communications within the meaning of WESCA.

## V.      CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiff's complaint.


Dated: January 17, 2023                                    Respectfully submitted,


Dante A. Marinucci (*pro hac vice* pending)      */s/ Julie Singer Brady*
**BAKER & HOSTETLER LLP**                        Julie Singer Brady (*pro hac vice*)
127 Public Square, Ste. 2000                     Yameel L. Mercado Robles (*pro hac vice*
Cleveland, OH 44114                              pending*)*
Telephone: (216) 621-0200                        **BAKER & HOSTETLER LLP**
Facsimile: (216) 696-0740                        200 South Orange Avenue, Ste. 2300
dmarinucci@bakerlaw.com                          Orlando, FL 32801
                                                 Telephone: (407) 649-4000
                                                 Facsimile: (407) 841-0168
                                                 jsingerbrady@bakerlaw.com
                                                 ymercadorobles@bakerlaw.com

                                                 Alyse F. Stach
                                                 **BAKER & HOSTETLER LLP**
                                                 1735 Market Street, Ste. 3300
                                                 Philadelphia, PA 19103
                                                 Telephone: (215) 568-3100
                                                 Facsimile: (215) 568-3439
                                                 astach@bakerlaw.com

                                                 *Counsel for Defendant Liberty Mutual*
                                                 *Insurance Company*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 17, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Julie Singer Brady*
Julie Singer Brady

*Counsel for Defendant Liberty Mutual*
*Insurance Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRITTANY VONBERGEN, et al., | |
| Plaintiff, | |
| v. | Civil Action No.: 2:22-CV-04880 |
| LIBERTY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2023, upon consideration of Defendant Liberty Mutual Insurance Company's Motion to Dismiss Plaintiffs' Complaint, and for good cause shown, it is hereby **ORDERED** that the motion is **GRANTED**, and Plaintiff's Complaint is dismissed against Liberty Mutual **WITH PREJUDICE**.

_____
Hon. Gene E. K. Pratter