## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

BRITTANY VONBERGEN, individually
and on behalf of all others similarly situated,

      Plaintiff,

          v.

LIBERTY MUTUAL INSURANCE
COMPANY,

      Defendant.

Case No. 2:22-CV-04880

Judge Gene E.K. Pratter

### DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, Liberty Mutual Insurance Company ("LMIC"), by and through its undersigned

counsel, respectfully requests that this Honorable Court grant its motion to dismiss Plaintiff

Brittany Vonbergen's ("Plaintiff") Amended Complaint (Doc. 19) for failure to show that personal

jurisdiction exists over LMIC pursuant to Federal Rule of Civil Procedure 12(b)(2) and failure to

state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

First, Plaintiff fails to show that this Court has personal jurisdiction over LMIC. LMIC is

neither incorporated in Pennsylvania nor does it maintain its principal place of business here. Thus,

there is no general jurisdiction over LMIC in this state. Further, it is well-settled that a company's

operation of a nationally accessible website does not, by itself, subject the company to personal

jurisdiction throughout the country, and Plaintiff has failed to show that her claims arise out of or

relate to any of LMIC's alleged contacts with Pennsylvania.

Second, Plaintiff's Amended Complaint fails to state a claim upon which relief can be

granted. Plaintiff alleges a single claim for violation of the Pennsylvania Wiretapping and

Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA"), but her

`

allegations do not meet the requirement of that statute—specifically, that defendant used a "device" to intercept the "contents" of an "electronic communication," as those terms are defined in WESCA. Accordingly, the Court should dismiss Plaintiff's claim pursuant to Rule 12(b)(6).

WHEREFORE, Defendant respectfully requests that the Court dismiss Plaintiff's action in its entirety, with prejudice, pursuant to Rules 12(b)(2) and/or 12(b)(6).

Dated: February 23, 2023                                    Respectfully submitted,

Dante A. Marinucci (*pro hac vice*)          _/s/ Alyse F. Stach_____
**BAKER & HOSTETLER LLP**                    Alyse F. Stach
127 Public Square, Ste. 2000                 **BAKER & HOSTETLER LLP**
Cleveland, OH 44114                          1735 Market Street, Ste. 3300
Telephone: (216) 621-0200                    Philadelphia, PA 19103
Facsimile: (216) 696-0740                    Telephone: (215) 568-3100
dmarinucci@bakerlaw.com                      Facsimile: (215) 568-3439
                                             astach@bakerlaw.com

                                             Julie Singer Brady (*pro hac vice*)
                                             Yameel L. Mercado Robles (*pro hac vice*)
                                             **BAKER & HOSTETLER LLP**
                                             200 South Orange Avenue, Ste. 2300
                                             Orlando, FL 32801
                                             Telephone: (407) 649-4000
                                             Facsimile: (407) 841-0168
                                             jsingerbrady@bakerlaw.com
                                             ymercadorobles@bakerlaw.com

                                             *Counsel for Defendant Liberty Mutual*
                                             *Insurance Company*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

BRITTANY VONBERGEN, individually
and on behalf of all others similarly situated,

      Plaintiff,

           v.

LIBERTY MUTUAL INSURANCE
COMPANY,

      Defendant.

Case No. 2:22-CV-04880

Judge Gene E.K. Pratter

Oral Argument Requested

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Dante A. Marinucci (*pro hac vice*)
**BAKER & HOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
dmarinucci@bakerlaw.com

 */s/ Alyse F. Stach*
Alyse F. Stach
**BAKER & HOSTETLER LLP**
1735 Market Street, Ste. 3300
Philadelphia, PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439
astach@bakerlaw.com

Julie Singer Brady (*pro hac vice*)
Yameel L. Mercado Robles (*pro hac vice*)
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Ste. 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
jsingerbrady@bakerlaw.com
ymercadorobles@bakerlaw.com

*Counsel for Defendant Liberty Mutual
Insurance Company*

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     RELEVANT ALLEGED FACTS.............................................................................2

III.    LEGAL STANDARD.................................................................................................3

IV.     ARGUMENT ..............................................................................................................4

        A.      The Court Does Not Have Personal Jurisdiction Over LMIC. ...............................4

                1.      LMIC is not subject to general jurisdiction in Pennsylvania......................5

                2.      This Court does not have specific jurisdiction over LMIC.........................5

                        i.      Plaintiff fails to allege that LMIC purposefully directed
                                session replay software at Pennsylvania. ..........................................6

                        ii.     Plaintiff's claims do not relate to activities LMIC purposefully
                                directed at Pennsylvania. ...................................................................8

        B.      Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted. ...............11

                1.      Session replay software is not a "device.".................................................12

                2.      Plaintiff's browsing activity is not the "contents" of an "electronic
                        communication."........................................................................................14

                3.      The browsing data that LMIC allegedly recorded through session
                        replay software is not an "electronic communication.".............................18

                4.      Plaintiff consented to LMIC's recording of information she
                        communicated when filling out the online form........................................19

V.      CONCLUSION.........................................................................................................23

## TABLE OF AUTHORITIES

**Cases** ..................................................................................................................... **Page(s)**

*Allen v. Brown,*
   320 F. Supp. 3d 16 (D.D.C. 2018) ...................................................................15, 19

*Arisha Byars v. Hot Topic, Inc.,*
   No. EDCV 22-1652, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ...............................21, 22

*Asanov v. Gholson, Hicks & Nichols, P.A.,*
   209 F. App'x 139 (3d Cir. 2006) ........................................................................4, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................................................................4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).....................................................................................4, 7, 21

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,*
   137 S. Ct. 1773 (2017)......................................................................................8

*Brodsky v. Apple Inc.,*
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................22

*Calder v. Jones,*
   465 U.S. 783 (1984)........................................................................................6

*Chant Eng'g Co. Inc. v. Cumberland Sales Co.,*
   No. 20-4559, 2021 WL 848062 (E.D. Pa. Mar. 5, 2021)
   ...............................................................................................5, 6, 7, 8, 10, 11

*Commonwealth v. Byrd,*
   235 A.3d 311 (Pa. 2020) ............................................................................19, 20, 21

*Commonwealth v. Cruttenden,*
   58 A.3d 9 (Pa. 2012) ....................................................................................20, 21

*Commonwealth v. Diego,*
   119 A.3d 370 (Pa. 2015) .............................................................................19, 20, 21

*Commonwealth v. Hogue,*
   2019 WL 3545843 (Pa. Super. Ct. Aug. 5, 2019)..................................................12

*Commonwealth v. Proetto,*
   771 A.2d 823 (Pa. Super. 2001)...................................................................20, 21, 23

*Connor v. Whirlpool Corp.,*
   No. 21-cv-14180-WPD, 2021 WL 3076477 (S.D. Fla. July 6, 2021) ....................................14

*Content Square SAS v. Quantum Metric, Inc.*,
No. 20-832-LPS, 2021 U.S. Dist. LEXIS 51656 (D. Del. Mar. 18, 2021) ..............................3

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ...............................................................................13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)........................................................................................................5, 8, 10

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009).......................................................................................................8

*Fischer v. Federal Express Corp.*,
42 F.4th 366 (3d Cir. 2022) .....................................................................................................5

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ......................................................................14, 18, 19

*Goldstein v. Luxottica of Am., Inc.*,
No. 21-80546-CIV, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ..................................14, 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)........................................................................................................4, 5, 8

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. Apr. 8, 2021) ......................................................................22

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
No. 07-1029, 2007 WL 4394447 (E.D. Pa. 2007) ......................................................13, 14, 16

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998).....................................................................................................6

*In re Zynga Privacy Litigation*,
750 F.3d 1098, 1107 (9th Cir. 2014......................................................................................16, 17

*Jacome v. Spirit Airlines, Inc.*,
No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021).........14, 16, 17, 18

*Marten v. Godwin*,
499 F.3d 290 (3d Cir. 2007).....................................................................................................7

*Massie v. General Motors Co.*,
No. 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ....................................9, 11

*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018) .......................................................................................9, 11

*Minotty v. Baudo*,
   42 So.3d 824 (Fla. Dist. Ct. App. 2010) ........................................................15, 19

*Nat'l Expositions, Inc. v. DuBois*,
   605 F. Supp. 1206 (W.D. Pa. 1985)..............................................................7

*Popa v. Harriet Carter Gifts, Inc.*,
   52 F.4th 121 (3d Cir. 2022) ................................................7, 12, 20, 21

*Potter v. Havlicek*,
   No. 3:06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008) .......................................14

*Rittinger v. Keystone Maint. Servs. Corp.*,
   2018 WL 3455856 (M.D. Pa. Jul. 18, 2018)..............................................................8

*Rocke v. Pebble Beach Co.*,
   541 F. App'x 208 (3d Cir. 2013) ........................................................10

*Smith v. Facebook*,
   262 F. Supp.3d 943 (N.D. Cal. 2017) ........................................................9

*Stranahan Gear Co., Inc. v. NL Indus., Inc.*,
   800 F.2d 53 (3d Cir. 1986)..............................................................4

*Surgical Laser Techs., Inc. v. C.R. Bard, Inc.*,
   921 F. Supp. 281 (E.D. Pa. 1996) ........................................................7

*Swiggum v. EAN Servs., LLC*,
   No. 8:21-cv-493-TPB-CPT, 2021 WL 3022735 (M.D. Fla. July 16, 2021)...........................14

*Toys "R" Us Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir.2003)..............................................................10

*U.S. v. Swiss American Bank, Ltd.*,
   274 F.3d 610 (1st Cir. 2001) ........................................................6

*United States v. Ackies*,
   918 F.3d 190 (1st Cir. 2019) ........................................................14

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
   75 F.3d 147 (3d Cir. 1996)..............................................................4

*Wesley Coll. v. Pitts*,
   974 F. Supp. 375 (D. Del. 1997)........................................................16

*Williams v. What if Holdings, LLC*, No. C 22-03780, 2022 WL 17869275 (N.D.
   Cal. Dec. 22, 2022) ........................................................22

*Wolstenholme v. Bartels*,
    511 F. App'x 215 (3d Cir. 2013) ..................................................................3

*Zippo Manufacturing Company v. Zippo Dot Com, Incorporated*,
    952 F. Supp. 1119 (W.D. Pa. 1997)..........................................................11

**Statutes**

18 Pa. Cons. Stat. § 5701 .................................................................... *passim*

18 Pa. Cons. Stat. § 5702 .................................................................... *passim*

18 Pa. Cons. Stat. § 5703 ..............................................................................12

18 Pa. Cons. Stat. § 5704 ......................................................................11, 12

18 Pa. Cons. Stat. § 5725 ..............................................................................22

18 U.S.C. § 2510(8) ......................................................................................16

Cal. Penal Code § 631....................................................................................22

Fla. Stat. § 934.02 .........................................................................................14

**Rules**

Fed. R. Civ. P. 4(e) .........................................................................................4

Fed. R. Civ. P. 12(b)(2)..................................................................................3

Fed. R. Civ. P. 12(b)(6)..................................................................................4

**Other Authorities**

*Apparatus*, <u>Oxford Advanced Learner's Dictionary</u>, available at
    https://www.oxfordlearnersdictionaries.com/us/definition/english/apparatus .......................13

*Device*, <u>Oxford Learner's Advanced Dictionary</u>, available at
    https://www.oxfordlearnersdictionaries.com/us/definition/english/device ............................13

## I.     INTRODUCTION

This lawsuit is part of a wave of class actions sweeping the country as plaintiffs' attorneys hope to strike gold by contorting anti-wiretap statutes to reach companies' use of software to monitor *their own websites*. Here, Plaintiff tries to stretch "WESCA," the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.*, to apply to Defendant Liberty Mutual Insurance Company's ("LMIC") alleged monitoring of her activity on *its own website*. Specifically, Plaintiff claims that LMIC violated WESCA by using "session replay spyware" to monitor the actions she says she took while browsing www.libertymutual.com. But Plaintiff does not claim that LMIC tracked her internet activity beyond her browsing on its website. Nor does she claim that LMIC disclosed any information that it allegedly captured through its use of session replay software.

As a threshold matter, this Court should dismiss the Amended Complaint (Doc. 19) because Plaintiff has not shown that this Court has personal jurisdiction over LMIC. While Plaintiff alleges she accessed LMIC's website in Pennsylvania and that LMIC markets and sells insurance products and services to Pennsylvanians through its website, it is well settled that a company's operation of a nationally accessible website, in itself, does not subject it to personal jurisdiction throughout the country. Plaintiff's claims must arise out of or relate to LMIC's purposely directed contacts with Pennsylvania to meet the Court's "minimum contacts" requirement. Despite the allegations added in her Amended Complaint regarding Pennsylvania, Plaintiff does not overcome this hurdle. Her claims arise out of or relate to LMIC's use of session replay software on its nationally accessible website, *not* LMIC's alleged marketing and selling of insurance in Pennsylvania. And she has not shown that LMIC purposefully directed its use of session replay software in Pennsylvania.

Even if Plaintiff could show personal jurisdiction exists over LMIC here (she cannot), this Court should join numerous other courts across the country that have rejected similar attempts to

contort anti-wiretapping statutes. To violate WESCA, LMIC must have used a "device" to intercept the "contents" of an "electronic communication," as those terms are defined in the statute. Plaintiff's allegations miss this mark.

To start, WESCA only prohibits interceptions made through a "device." But "a sequence of computer software instructions within a website's code" (Doc. 19 at ¶ 34 n.2) is not a device. What's more, Plaintiff's browsing "actions" while she perused LMIC's website—"mouse clicks and movements, keystrokes, search terms . . . pages and contents viewed by Plaintiff, scroll movements, and copy and paste functions" (*id.* ¶ 29)—do not constitute the substance of an electronic communication. And, finally, by "fill[ing] out an online auto insurance quote form" (*id.* ¶ 25), Plaintiff consented to LMIC's storing of the information she input—indeed, that is the very point of filling out an online application.

For these reasons, as explained fully below, this Court should dismiss Plaintiff's Amended Complaint.

## II.    RELEVANT ALLEGED FACTS

LMIC operates www.libertymutual.com, which is accessible throughout the United States and allows visitors to browse insurance products. (Doc. 19 at ¶¶ 23, 25.) LMIC is a Massachusetts corporation with its principal place of business in Massachusetts. (*Id.* at ¶ 17.)

Plaintiff alleges she visited LMIC's website "on or about March of 2022" while in Pennsylvania. (*Id.* at ¶¶ 16, 24, 27.) She claims that, during her visit, she "filled out an online auto insurance quote form" and purportedly inputted her personal information in this online form. (*Id.* at ¶¶ 25, 28.) But Plaintiff *does not* allege she purchased anything from LMIC, that she actually received a quote or any product or service from LMIC, or that she has any other relationship with LMIC. Instead, her claims relate merely to LMIC's use of session replay software on its website.

Session replay software is a common analytics tool employed by numerous websites, including major retailers located nationwide to ensure functionality on their websites. *See* https://www.datadoghq.com/product/real-user-monitoring/session-replay/ (last accessed February 20, 2023); https://contentsquare.com/product/capabilities/session-replay/ (last accessed February 20, 2023). This software tool allows website operators to troubleshoot their websites to fix problems that interfere with website users' access and to understand how users' interact with their websites to improve the overall digital experience for users. *Id*. For example, users' repeatedly clicking a button on a website may indicate that the button is not operating correctly and requires maintenance. Session replay simply "achieve[s] an improved technological result in *conventional industry practice.*" *Content Square SAS v. Quantum Metric, Inc.*, No. 20-832-LPS, 2021 U.S. Dist. LEXIS 51656, at *13 (D. Del. Mar. 18, 2021) (emphasis added).

Plaintiff claims that LMIC "embedded within its websites' code" session replay software that it used to "intercept[]" how she "interacted with the website." (*Id.* at ¶¶ 3, 34.) Stated differently, Plaintiff alleges that she sent "commands" to LMIC's servers "instructing [LMIC] what content was being viewed, clicked on, requested and/or inputted by Plaintiff" and that these "commands" were the "communications" LMIC intercepted. (*Id.* at ¶ 28.) Plaintiff also relies on the allegation that she "filled out an online auto insurance form" while browsing LMIC's website. (*Id.* at ¶ 25; *accord ¶¶* 26, 28, 32, 45.) Based on Plaintiff's browsing activities and her filling out an online auto insurance quote form, Plaintiff attempts to bring a claim under WESCA. She has failed to do so for the reasons stated below.

## III.    LEGAL STANDARD

Under Rule 12(b)(2), Plaintiff bears the burden "of showing that personal jurisdiction exists." *Wolstenholme v. Bartels*, 511 F. App'x 215, 218 (3d Cir. 2013). To do so, she must "establish[ ] with reasonable particularity sufficient contacts between the defendant[ ] and . . . the

forum state[.]" *Asanov v. Gholson, Hicks & Nichols, P.A.*, 209 F. App'x 139, 141 (3d Cir. 2006). Reliance on "bare pleadings alone" will not suffice. *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 58-59 (3d Cir. 1986) (citation omitted).

Under Rule 12(b)(6), only complaints that "state[ ] a plausible claim for relief survive[ ] a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And while courts accept material allegations as true and resolve factual inferences in a plaintiff's favor, they reject bald assertions or inferences of fact, as well as "threadbare" legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). Ultimately, "where [] well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

## IV.    ARGUMENT

### A.    The Court Does Not Have Personal Jurisdiction Over LMIC.

Plaintiff's Amended Complaint fails to show that this Court has personal jurisdiction over LMIC. "A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (citing Fed. R. Civ. P. 4(e)). Pennsylvania's long-arm statute "is coextensive with the limits placed on the states by the federal Constitution." *Id.* Federal courts in Pennsylvania therefore look to federal law to determine whether personal jurisdiction exists. *Id.* In order to establish personal jurisdiction, Plaintiff must show that LMIC "made constitutionally sufficient 'minimum contacts' with" Pennsylvania. *Id.*

Sufficient "minimum contacts" comes in two forms: general jurisdiction or specific jurisdiction. "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*

*v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction, on the other hand, depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

Plaintiff does not allege and cannot establish either general or specific jurisdiction.

### 1.    LMIC is not subject to general jurisdiction in Pennsylvania.

"For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as 'at home,' which generally is restricted to the corporation's state of incorporation or the state of its principal place of business." *Fischer v. Federal Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("paradigm" basis for general jurisdiction over company is its state of incorporation and principal place of business). Plaintiff alleges that LMIC is incorporated under the laws of Massachusetts and that it maintains its principal place of business in Massachusetts. (Doc. 19 at ¶ 17.) And she does not allege any exceptional circumstances that would render LMIC "essentially at home" in Pennsylvania. Thus, Plaintiff's Amended Complaint does not show that the Court has general jurisdiction over LMIC.

### 2.    This Court does not have specific jurisdiction over LMIC.

"[S]pecific jurisdiction allows the court to hear claims *that arise from or relate to the party's contacts with the forum state*, such that the defendant should reasonably anticipate being haled into court in that forum." *Chant Eng'g Co. Inc. v. Cumberland Sales Co.*, No. 20-4559, 2021 WL 848062, at *3 (E.D. Pa. Mar. 5, 2021) (emphasis added). Courts use a three-part test to analyze this question: (1) whether defendant "purposefully directed his activities at the forum"; (2) whether plaintiff's claim "arise[s] out of or relate[s] to at least one of those purposefully directed activities";

and (3) if the first two requirements are met, whether there are "additional factors to ensure that the assertion of jurisdiction [] comport[s] with fair play and substantial justice." *Id.*

Plaintiff's allegations do not meet the first two elements of this test, and thus the Court need not consider the third. The Amended Complaint fails to allege facts showing that LMIC purposefully directed session replay software at Pennsylvania or that Plaintiff's claim for a violation of a state wiretap statute arises out of or relates to LMIC's alleged contacts with the state.

> i.     *Plaintiff fails to allege that LMIC purposefully directed session replay software at Pennsylvania.*

Plaintiff argues that specific jurisdiction exists over LMIC because LMIC allegedly directed "tortious conduct" at Pennsylvania. (Doc. 19 at ¶ 19.) Plaintiff's allegations, however, fall short of showing this to be true. District courts in Pennsylvania apply the "*Calder* effects test" to evaluate whether intentional conduct was directed at a forum. *Chant*, 2021 WL 848062, at *5 (citing *Calder v. Jones*, 465 U.S. 783 (1984)); *see also U.S. v. Swiss American Bank, Ltd.*, 274 F.3d 610, 624 (1st Cir. 2001) ("*Calder* addressed purposeful availment[.]"). Under this test, courts analyze whether "a plaintiff shows that: (1) the defendant committed an intentional act; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that act; and (3) the defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the activity." *Chant*, 2021 WL 848062, at *5. Important here, "[t]he *Calder* effects test is not satisfied by the 'mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there.'" *Id.* (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)). "Rather, a plaintiff must 'point to other actions that adequately demonstrate that the defendants targeted (or 'expressly aimed' their conduct at) the forum." *Id.* "[A]bsent some conduct by defendant directed at Pennsylvania rather than simply directed at plaintiff,

Pennsylvania is not a reasonably foreseeable forum." *Id.*

Here, Plaintiff offers no facts suggesting that LMIC's use of session replay software was aimed or targeted at Pennsylvania. Instead, she simply alleges that LMIC intercepted her communications while she was in Pennsylvania. But such a conclusory allegation is insufficient as a matter of law. *Twombly*, 550 U.S. at 555; *Nat'l Expositions, Inc. v. DuBois*, 605 F. Supp. 1206, 1212 (W.D. Pa. 1985) ("Plaintiffs' papers are devoid of any factual statements demonstrating personal jurisdiction over [defendant], but instead contain bare, unsubstantiated allegations."); *see also Chant*, 2021 WL 848062, at *5 ("[A] plaintiff must 'point to other actions that adequately demonstrate that the defendants targeted (or 'expressly aimed their conduct at) the forum.'").

Plaintiff's citation to *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022) (Doc. 19 at ¶ 19), is inapposite. The Third Circuit did not address whether it had personal jurisdiction over the defendants in *Popa*. Rather, the language from *Popa* that Plaintiff relies on actually pertained to the location of an interception for purposes of determining whether WESCA even applied. *Popa*, 52 F.4th at 130 (addressing fact that "courts have declined to extend WESCA to cover conduct occurring wholly outside" Pennsylvania). As explained above, it is well settled that a plaintiff does not establish jurisdiction by simply alleging that she felt the effects of a defendant's out-of-state conduct within Pennsylvania, and *Popa* holds no differently. . *Chant*, 2021 WL 848062, at *5 ("There is a critical difference between an act which has an effect in the forum and one directed at the forum itself . . . . [A]bsent some conduct by defendant directed at Pennsylvania rather than simply directed at plaintiff, Pennsylvania is not a reasonably foreseeable forum." (quoting *Surgical Laser Techs., Inc. v. C.R. Bard, Inc.*, 921 F. Supp. 281 (E.D. Pa. 1996)); *Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007) ("Because [plaintiff] has not shown defendants expressly aimed their conduct at Pennsylvania, we will affirm the District Court's grant

of summary judgment.").

>    ii.    *Plaintiff's claims do not relate to activities LMIC purposefully directed at Pennsylvania.*

Plaintiff's remaining jurisdictional allegations amount to the argument that LMIC markets and sells insurance to Pennsylvanians and knows that its website is accessible in Pennsylvania. (Doc. 19 at ¶ 18.) But neither of these arguments are sufficient to establish the necessary relatedness between Plaintiff's claim and LMIC's "purposefully directed activities" in Pennsylvania required to support specific jurisdiction. *Chant*, 2021 WL 848062, at *3.

Specific jurisdiction is available only where the case "arises out of or relates to" the defendant's specific in-state contacts. *Daimler*, 571 U.S. at 127; *see Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1776 (2017) ("What is needed is a connection between the forum and the specific claims at issue."); *Goodyear*, 564 U.S. at 919 ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (quotation omitted).

The specific contacts that Plaintiff alleges LMIC has with Pennsylvania—marketing and/or selling insurance in the state (Doc. 19 at ¶ 18)—do not give rise to Plaintiff's website-monitoring-based claims. In fact, Plaintiff does not allege that she ever purchased a product from LMIC while in Pennsylvania. And the missing link between LMIC's alleged contacts with Pennsylvania and Plaintiff's claims warrants a finding of no personal jurisdiction. *See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009) (affirming lack of specific jurisdiction because "appellants do not allege that their claims 'arise out of or relate to' [] contacts within Pennsylvania"); *Rittinger v. Keystone Maint. Servs. Corp.*, 2018 WL 3455856, at *7-8 (M.D. Pa. Jul. 18, 2018) ("relatedness" requirement not satisfied where plaintiff alleged certain parts were shipped into Pennsylvania but "none of [those] parts [were] related to any claims in

th[e] case").

Plaintiff's argument that LMIC generally knows that its website is accessible in Pennsylvania cannot establish specific jurisdiction either. The court's decision in *Massie v. General Motors Co.*, a case with similar allegations regarding GM's alleged use of session replay software on its website, is on point. No.: 1:20-cv-01560, 2021 WL 2142728, at *1 (E.D. Cal. May 26, 2021). In *Massie*, the court held that specific jurisdiction did not exist in California simply because the plaintiff alleged that "GM knew and foresaw that the wiretapping would impact Californians." *Id.* at *5. The court agreed with GM that "operat[ing] [a] broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction" over claims related to information collected on that website. *Id.* at *6. And the fact that GM received profits from California website visitors was not sufficient to establish personal jurisdiction because the claims at issue arose from and related to "session recording software allegedly installed on GM's nationally accessible websites," not business GM conducted through the website. *Id.*

The relatedness requirement required to convey specific jurisdiction is particularly important here because, as the *Massie* court recognized, if Plaintiff's allegations were sufficient for specific jurisdiction, "every online advertiser worldwide [could] be haled" into every state. *Id.* at *6 (quoting *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018)); *see Smith v. Facebook*, 262 F. Supp.3d 943, 952 (N.D. Cal. 2017) ("Under Plaintiffs' theory, every website operator that embeds one of these tools could be haled into court where the third-party company resides. Personal jurisdiction cannot reasonably stretch so far."). And as the Third Circuit has made clear, "'the mere operation of a commercially available web site should not subject the operator to jurisdiction anywhere in the world.'" *Rocke v. Pebble Beach Co.*, 541 F. App'x 208,

211 (3d Cir. 2013) (holding that "Pebble Beach's interactive website also fails to qualify as purposeful contact") (quoting *Toys "R" Us Inc. v. Step Two, S.A.*, 318 F.3d 446, 452–53 (3d Cir.2003)); *accord Chant*, 2021 WL 848062, at *3; *see also Motus, LLC CarData Consultants, Inc.*, 23 F.4th 115, 125 (1st Cir. 2022) (mere operation of websites cannot establish specific jurisdiction because "'the universality of websites in the modern world would overwhelm constitutional limitations' and render website operators amenable to suit anywhere within the vast reach of the internet").

Therefore, it is not enough for Plaintiff to simply claim that LMIC targeted Pennsylvania by operating a website that Pennsylvania citizens (along with the citizens of every other state) could use to purchase insurance products or services. Nor is it enough to simply claim the website contained material specific to Pennsylvania residents. (Doc. 19 at ¶ 18). Plaintiff must show that her claims regarding LMIC's use of session replay software in its nationally accessible website "arise out of or relate to" LMIC's alleged contacts with Pennsylvania. *Daimler*, 571 U.S. at 127. But LMIC's alleged marketing and selling of insurance products and services in Pennsylvania is irrelevant to Plaintiff's claim, which is premised solely on website-monitoring activity. Indeed, noticeably absent from the Amended Complaint are allegations that any servers used for session replay software are located in Pennsylvania, that LMIC's decision to implement session replay software was made in Pennsylvania as opposed to its headquarters in Massachusetts, that LMIC's IT personnel responsible for the implementation and use of session replay software are located in Pennsylvania, or even that the session replay software itself originated from Pennsylvania or was implemented to target Pennsylvanians.

The law simply does not support a finding of specific jurisdiction where LMIC's alleged activity in the forum state is unrelated to the alleged wrongful actions that form the basis of

Plaintiff's claim. *See Masie*, 2021 WL 2142728, at *6; *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) ("Matus's claims 'arise from' only the online activities that Premium aimed at the entire world. If Premium can be haled into California merely on the basis of its universally accessible website, then, under Matus's proposed rule, it can be haled into every state, and respectively, every online advertiser worldwide can be haled into California.").[1]

Because Plaintiff failed to allege with "reasonable particularity" the "sufficient contacts" needed between LMIC's use of session replay software and Pennsylvania, the Court should dismiss this action for lack of personal jurisdiction. *Asanov*, 209 F. App'x at 141.

### B.    Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted.

Even if this Court has personal jurisdiction over LMIC (it does not), it should dismiss the Amended Complaint because the alleged conduct at issue does not violate WESCA. The statute prohibits the intentional interception, use, or disclosure of a "wire, electronic, or oral communication" unless one of several exceptions apply. *See* 18 Pa. Cons. Stat. §§ 5703, 5704. Here, Plaintiff alleges that LMIC unlawfully "intercept[ed]" her "communications" with LMIC's website via session replay software. (Doc. 19 at ¶¶ 3, 40.) Specifically, Plaintiff claims that LMIC

---

[1] In the context of websites, courts often apply the *Zippo* sliding-scale approach where "the likelihood of establishing personal jurisdiction is 'directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'" *Chant*, 2021 WL 848062, at *5 (quoting *Zippo Manufacturing Company v. Zippo Dot Com, Incorporated*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)). "On one end of the scale (where personal jurisdiction can be established) are situations where a defendant uses an interactive commercial website to actively transact business with residents of the forum state. At the other end of the scale (where personal jurisdiction is lacking) are situations where a passive website merely provides information that is accessible to users in the forum state). When a case falls between these two extremes, courts examine the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* (cleaned up). But the *Zippo* approach does not excuse the requirement that Plaintiff's claim "arise out of or relate to" the activities LMIC purposely directs at Pennsylvania. *Id.* at *3. Thus, even if Plaintiff can meet the *Zippo* test, the Court still lacks personal jurisdiction because her claim arises out of the use of session replay software, not the fact that LMIC may sell policies to Pennsylvania residents (as well as residents of numerous other states).

tracked *her activity* on its website and that LMIC stored information that *she communicated* to the company through its website. (*See id.*)

Accordingly, Plaintiff's lawsuit turns on whether her mere interactions with LMIC's website constituted "electronic communications" whose "contents" were unlawfully "intercepted" by a "device" within the meaning and scope of the statute. *See* 18 Pa. Cons. Stat. §§ 5702, 5703, 5725. They do not. Therefore, Plaintiff does not state a claim for a violation of WESCA.

### 1.    Session replay software is not a "device."

Plaintiff's WESCA claim should be dismissed because session replay software is not a "device" that "intercepts" communications. *See* 18 Pa. Cons. Stat. § 5702. An "intercept" is an "acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other *device*." *Id.* (emphasis added). "The WESCA's use of 'intercept' thus reduces to acquiring certain communications using a device." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 126 (3d Cir. 2022). "Device," in turn, means "[a]ny device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic, or oral communication" other than things like telephone or telegraph instruments, hearing aids, and call-center equipment used for training or quality control. *See* 18 Pa. Cons. Stat. § 5702.

No Pennsylvania court has extended the meaning of "device" under WESCA to include *non-physical*, intangible things such as software code or website cookies.[2] This makes sense when the words device and apparatus are given "their plain and ordinary meaning." *Commonwealth v. Hogue*, 2019 WL 3545843, at *4 n.8 (Pa. Super. Ct. Aug. 5, 2019). In normal parlance, a "device"

---

[2] Because the parties did not address this issue in *Popa*, the Third Circuit "assume[d] for purposes of [its] opinion," but without deciding, that session replay code was a "device." 52 F.4th at 131 n.8. Thus, *Popa* did not address this vital element in establishing a claim for violation of WESCA.

means "an object or piece of equipment that has been designed to do a particular job." *Device*, Oxford Learner's Advanced Dictionary, available at https://www.oxfordlearnersdictionaries.com/us/definition/english/device (last visited on February 23, 2023). And an "apparatus" is "the tools or other pieces of equipment that are needed for a particular activity or task." *Apparatus*, Oxford Advanced Learner's Dictionary, available at https://www.oxfordlearnersdictionaries.com/us/definition/english/apparatus (last visited on February 23, 2023).

Here, Plaintiff alleges that session replay is "software;" specifically, an intangible "sequence of computer software instructions" that is "embedded within [LMIC's] website code . . . ." (Doc. 19 at ¶ 34.) This set of "computer software instruction" found within website code does not fit within the meaning of "device" under WESCA. And Plaintiff's characterizations of this software as a "sophisticated system capable of capturing, recording, interpreting, reformatting, and processing electronic communications" is unavailing. *See* 18 Pa. Cons. Stat. § 5702 (examples in definition of "electronic, mechanical, or other device" are all tangible equipment).

A court in this District has analyzed what constitutes a "device," concluding that a "driver or server on which an e-mail is received does not constitute a device for purposes of the Wiretap Act." *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-1029, 2007 WL 4394447, at *4 (E.D. Pa. 2007) (citing *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (concluding same)). And if a driver or server is not a device, then certainly software is not. In fact, several decisions from state and federal courts in Florida have concluded that session replay software is not a "device" under the parallel Florida Security of Communications Act, Chapter 934 of Florida Statutes (the "Florida Wiretap Act").[3] In holding that the plaintiff did not allege the use

---

[3] The definition of "device" in WESCA and in the Florida Wiretap Act are substantively the same. *Compare* 18 Pa. Cons. Stat. § 5702 *with* Fla. Stat. § 934.02(4).

of a device under Florida's statute, one Florida court found it persuasive that "other courts have held that software, email servers, and drives do not constitute devices under the wiretapping statutes." *Jacome v. Spirit Airlines, Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (citing *Potter v. Havlicek*, No. 3:06-CV-211, 2008 WL 2556723, at *1, *8 (S.D. Ohio June 23, 2008) (dismissing wiretap claim because "device" did not encompass computer software that "automatically record[ed] and store[d] . . . all activity of the [computer's user]")). Numerous federal courts in Florida have dopted court's reasoning in Jacome. *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) (adopting *Jacome* decision); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1320 (S.D. Fla. 2021) (agreeing with *Jacome* and decisions adopting same); *Connor v. Whirlpool Corp.*, No. 21-cv-14180-WPD, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (adopting and incorporating *Jacome* decision); *Swiggum v. EAN Servs., LLC*, No. 8:21-cv-493-TPB-CPT, 2021 WL 3022735, at *2 (M.D. Fla. July 16, 2021) (adopting analysis in *Jacome*); *see also United States v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) ("software is not a 'device' under its plain meaning.").

This Court should follow *Jacome*, find the sound reasoning of *Ideal Aerosmith* and the decisions of various Florida federal courts applying the analogous Florida Wiretap Act persuasive, and hold that Plaintiff has failed to allege that LMIC used a "device" to "intercept" her electronic communications within the meaning of WESCA.

### 2.    Plaintiff's browsing activity is not the "contents" of an "electronic communication."

Part of Plaintiff's WESCA claim is that LMIC improperly tracked her "mouse clicks and movements, keystrokes, search terms, . . . pages and content viewed by Plaintiff, scroll movements,

and copy and paste actions."[4] (Doc. 19 at ¶ 29.) But the alleged recording of Plaintiff's browsing

activity, mouse clicks, movements and search terms while on LMIC's website is not an

interception of the "contents" of an electronic communication. Those allegations amount to

nothing more than the alleged recording of Plaintiff's *browsing activity* on LMIC's website. (*Id.*

at ¶ 3 (alleging LMIC "intercepted" how Plaintiff "*interacted* with the website"); *id.* at ¶ 5 (alleging

session replay "is essentially a video of a Class member's entire *visit* to [LMIC's] website,

including all of *their actions*"); *id.* at ¶ 8 (alleging session replay software "permits companies like

[LMIC] to view the *interactions* of visitors on their website in real-time") (emphasis added).

        The recording of Plaintiff's electronic movements on LMIC's website is not actionable

under WESCA, much like videotaping someone browsing around a brick-and-mortar store is not.

*Cf. Allen v. Brown*, 320 F. Supp. 3d 16, 38 (D.D.C. 2018) ("*[E]very* federal appeals or district

court to have considered the question has concluded that silent video surveillance is not covered

by the federal wiretapping statute."); *Minotty v. Baudo*, 42 So.3d 824, 832 (Fla. Dist. Ct. App.

2010) ("[S]ilent surveillance videos of the [plaintiff's] physical movements had no content because

they did not convey the substance of the particular communication.").

        An "intercept" is the "[a]ural or other acquisition of the *contents* of" Plaintiff's

communications. 18 Pa. Cons. Stat. § 5702 (emphasis added). WESCA defines "contents" to mean

"information concerning the substance, purport, or meaning of [a] communication." *Id.* Thus,

WESCA is intended and designed to protect the *substantive* aspects of private communications,

like a conversation between individuals. For this reason, "contents" does not include tangential

pieces of computer metadata that the Pennsylvania legislature never envisioned when passing

_____

[4] LMIC addresses Plaintiff's remaining allegations concerning the online form she alleged she
filled out in Pt. B.3., *infra.*

WESCA decades ago. *Cf. Jacome*, 2021 WL 3087860, *3 ("Congress did not intend for the Federal Wiretap Act to extend to the use of commonplace analytics software to improve a website browsers' experience[,] and the [Florida Security of Communications Act], being modeled after the Federal Wiretap Act, likewise does not extend to the use of commonplace analytics software to improve a website browsers' experience."); *Wesley Coll. v. Pitts*, 974 F. Supp. 375, 384 (D. Del. 1997) ("Congress had in mind more surreptitious threats to privacy than simply looking over one's shoulder at a computer screen" in enacting federal anti-wiretapping statute.); *Ideal Aerosmith*, 2007 WL 4394447, at *3 ("[WESCA] tracks the language set forth in the Federal Act, and has been interpreted identically.").

The Ninth Circuit's decision in *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1107 (9th Cir. 2014), is instructive as to the intended purpose and meaning of the term "contents" in the context of the Federal Wiretap Act, which defines "contents" in substantively the same way as WESCA. *Compare* 18 Pa. Cons. Stat. § 5702 ("'Contents.' As used with respect to any wire, electronic or oral communication, is any information concerning the substance, purport, or meaning of that communication.") *with* 18 U.S.C. § 2510(8) ("'[C]ontents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication.").

In *In re Zynga*, the Ninth Circuit held that the plaintiff's Facebook ID, which "functions as a 'name' or 'subscriber number or identity,'" and "location of a webpage a user is viewing [that] functions like an 'address'" were not protected "contents" sufficient to survive a motion to dismiss. *Id.* That is because the definition of "contents" is intended to mean "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')." *Id.* at 1106.

The basic browsing actions that Plaintiff alleges were intercepted by LMIC on its own website do not meet this definition of "contents." Numerous courts that have considered similar wiretapping claims based on the use of session replay software to track browsing activity on commercial websites have dismissed such claims for this reason. Multiple state and federal courts in Florida applying Florida's analogue to WESCA—the Florida Wiretap Act—have held that mere browsing activity is not "contents" of electronic communication.[5] *Jacome*, 2021 WL 3087860 at *4 ("mouse clicks and movements, keystrokes, search terms, information inputted by [p]laintiff, and pages and content viewed by [p]laintiff" are "precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act *or any of its state analogs because it does not convey the substance or meaning of any message*") (emphasis added); *Goldstein*, 2021 WL 4093295, at *2 (same conclusion in case involving session replay software); *Costco*, 559 F. Supp. at 1320 (same).

Here, Plaintiff portrays her browsing interactions with LMIC's website as "instructions to [LMIC's] computer servers" in an attempt to convert her website-browsing activity into substantive communications. (Doc. 19 at ¶ 28.) But her characterization falls short because, at bottom, her browsing activity and mouse clicks on LMIC's website were simply "commands" that are "equivalent to 'dialing, routing, addressing, or signaling information" that "courts routinely deem non-contents." *Costco*, 559 F. Supp. 3d at 1322 (citing cases). Simply put, Plaintiff's

---

[5] The definition of "contents" in WESCA is substantively the same as in the Florida Wiretap Act. *Compare* 18 Pa. Cons. Stat. § 5702 ("'Contents.' As used with respect to any wire, electronic or oral communication, is any information concerning the substance, purport, or meaning of that communication.") *with* Fla. Stat. § 934.02(7) ("'Contents,' when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication.").

purported intent to "communicate" with LMIC's website through her browsing activity and mouse clicks and movements "does not mean [her] communications revealed any substance." *Id.*

The Court should hold that Plaintiff's browsing activity is not the protected "content" of a communication under WESCA.

### 3. The browsing data that LMIC allegedly recorded through session replay software is not an "electronic communication."

The browsing activities Plaintiff alleges LMIC recorded were not "electronic communications," a required element for a WESCA claim. WESCA exempts from the definition of "electronic communication" any "communication from a tracking device," which is "[a]n electronic or mechanical device which permits only the tracking of the movement of a person or object." 18 Pa. Cons Stat. § 5702. Plaintiff's browsing activity that session replay software allegedly captured is no more than her movements on LMIC's website: "mouse *clicks* and *movements*, keystrokes, search terms, . . . pages and content *viewed* by Plaintiff, scroll *movements*, and copy and paste *actions*." (Doc. 19 at ¶ 40 (emphasis added).)

Courts considering the use of session replay software in cases under Florida's parallel to WESCA have held that information concerning mouse clicks and other website commands relate solely to a plaintiff's virtual online movement and are not communications. In *Jacome*, the court found session replay software, "which tracks a website browser's movements[,]" is "definitionally excluded from the term 'electronic communications.'" 2021 WL 3087860 at *3. And, in *Costco*, the court dismissed a case asserting similar claims because the "mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record[ing] information Defendant could have obtained through a security camera at a brick-and-mortar store." 559 F. Supp. 3d at 1321.[6]

---

[6] Speculating plaintiffs in similar actions have also argued that security surveillance in brick-and-mortar stores violates anti-wiretapping statutes. But "silent surveillance videos of the [plaintiff's] physical movements had no content because they did not convey the substance of the particular

The Court should find that Plaintiff's browsing activity was not an "electronic communication" so as to support a claim under WESCA.

### 4.    Plaintiff consented to LMIC's recording of information she communicated when filling out the online form.

Plaintiff also contends that she purportedly filled out an online auto insurance quote form on LMIC's website that included personal information. (Doc. 19 at ¶¶ 26, 28.) In other words, Plaintiff seeks to hold LMIC liable for storing the very information she purposely filled out on LMIC's website and intended to communicate via electronic means. (Doc. 19 at ¶¶ 25-26, 28, 32, 45 (alleging she communicated her personal information to LMIC by filling out an online form).) Pennsylvania law does not permit such a result.

Under WESCA, there is no unlawful interception where all parties to the communication have given prior consent to the interception. *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020). "[P]rior consent can be demonstrated when the person being recorded knew or should have known, that the conversation was being recorded." *Id.* (quoting *Commonwealth v. Diego*, 119 A.3d 370, 377 (Pa. 2015)). This standard "is one of a reasonable person, and not proof of the subjective knowledge of the person being recorded." *Id.* The focus is thus "the objective knowledge of a reasonably intelligent person" and "the objective reasonable person consents by proceeding with the communication knowing it will be recorded." *Id.*

The Pennsylvania Supreme Court has acknowledged that "by the very act of sending a communication over the Internet, the party expressly consents to the recording of the message." *Id.* at 320 (quoting *Commonwealth v. Cruttenden*, 58 A.3d 9, 98 (Pa. 2012)); *Diego*, 119 A.3d at

---

communication." *Minotty*, 42 So.3d at 832; *Allen*, 320 F. Supp. 3d at 38 ("Indeed, *every* federal appeals or district court to have considered the question has concluded that silent video surveillance is not covered by the federal wiretapping statute." (emphasis in original)).

376-77 ("It is the sender's knowledge that the communication will automatically be recorded, surmised from the very nature of the selected means of transmission, that is dispositive of the sender's lack of an expectation of privacy or, at least, the lack of any reasonable expectation of privacy."); *Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. 2001) ("Any reasonably intelligent person, savvy enough to be using the Internet, however, would be aware of the fact that messages are received in a recorded format, by their very nature, and can be downloaded or printed by the party receiving the message. By the very act of sending a communication over the Internet, the party expressly consents to the recording of the message.").

As applied here, any reasonable person would know that LMIC would store the information that Plaintiff submitted via an online auto insurance quote form. The point of Plaintiff's filling out the form was to have LMIC review it and respond to her request for a quote. To do so, LMIC would necessarily need to store the information Plaintiff communicated while she was completing the online form. Thus, when Plaintiff filled out the form on LMIC's website and, as she alleges, communicated that information to LMIC via electronic means (*i.e.*, the website) she consented to the recording of her information.

*Popa* does not change this conclusion. The Third Circuit's decision in *Popa* did not reach the question of whether the plaintiff consented to the alleged interception by her conduct. 52 F.4th at 132 (refusing to rule on issue of whether plaintiff consented to recording). And the Third Circuit's discussion of the decisions in *Cruttenden*, *Diego*, and *Proetto* was limited to whether there was a direct-party exception under WESCA. *Id.* at 129 (interpreting *Diego* as "a consented intercept case" as opposed to deciding whether there is an *exception* for direct-party communications regardless of consent). In other words, the Third Circuit's decision in *Popa* did not limit or otherwise disagree with the *consent* analysis in the *Cruttenden, Diego,* and *Proetto*

20

decisions. *Id.* at 132 (citing to *Byrd*, 235 A.3d at 319, for Pennsylvania law on consent but declining to rule on question of consent because arguments had not been addressed by district court).

Finally, Plaintiff's attempt to reframe her allegations as LMIC's "procuring" a third party to allegedly intercept her communications with LMIC cannot salvage her claim. (Doc. 19 at ¶¶ 40, 95.) By sending "communications" to LMIC via the company's website, Plaintiff consented to the storing of those "communications," and the manner in which that storing occurred does not undo her prior consent. The Court should reject Plaintiff's conclusion that she did not "impliedly consent" to a "third party Session Replay Provider" recording the information she communicated to LMIC through LMIC's website. (Doc. 19 at ¶ 58.) *Twombly*, 550 U.S. at 555-56.

Decisions from California federal courts considering whether website operators violated California's anti-wiretapping statute by hiring third-party session replay providers are instructive. Under "CIPA," the California Invasion of Privacy Act, a person is liable if he "aids, agrees with, employs, or conspires with any person or persons to unlawfully" intercept electronic communications. *Arisha Byars v. Hot Topic, Inc.*, No. EDCV 22-1652, 2023 WL 2026994, at *7 (C.D. Cal. Feb. 14, 2023). As part of the nationwide wave of cases regarding session replay software, litigants have argued that website operators violate CIPA when they use third-party software providers for session replay.

California federal courts have held that website operators are not liable under CIPA for using third parties to implement session replay software because such third parties are a mere "extension" of the website operator and not a "third-party eavesdropper." *Id.* at *10. In doing so, the courts looked to whether the plaintiff alleged that the third party used the intercepted communications for its own purposes unrelated to the website (*i.e.*, "aggregation of data for resale"). *Id.* Where plaintiffs allege that a third party merely implemented session replay software

*for a website operator's use*, the courts have found no CIPA violation. *Id.* (dismissing CIPA claim; "the question boils down to whether [the third-party vendor] was an independent third party hired to eavesdrop on [Defendant's] communications, or whether [the third-party vendor's] software was merely a tool that [Defendant] used to record its own communications with plaintiff"); *Williams v. What if Holdings, LLC*, No. C 22-03780, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (dismissing CIPA claim after finding "[t]hat recorded videos are hosted and accessed on ActiveProspect's servers is part of how the software tool functions, and plaintiff makes no allegation that ActiveProspect or its TrustedForm product affirmatively engages with that data in any way other than to store it"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. Apr. 8, 2021) ("[T]here are no allegations here that FullStory intercepted and used the data itself. Instead, as a service provider, FullStory is an extension of Noom. It provides a tool—like the tape recorder in Rogers—that allows Noom to record and analyze its own data in aid of Noom's business. It is not a third-party eavesdropper.").

The Court should apply the same analysis and reasoning here. WESCA's language, "procures any other person" is substantively similar, if not narrower than, CIPA's language, "aids, agrees with, employs, or conspires with." *Compare* 18 Pa. Cons. Stat. § 5725, *with* Cal. Penal Code § 631(a). Indeed, CIPA in many ways mirrors the Federal Wiretap Act; and, as illustrated above in Part IV.B.2 *supra*, WESCA is modeled after the Federal Wiretap Act. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (in analyzing whether plaintiff stated claim for interception of electronic communication under CIPA, noting that "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act"). And, here, Plaintiff's own allegations illustrate the fact that the alleged third-party software providers are mere extensions of LMIC and not persons that LMIC procured to independently intercept LMIC's communications with Plaintiff

for their own purposes.

Plaintiff expressly alleges that the third-party software providers' alleged interception of her communications to LMIC was for *LMIC*'s "*own purposes*." (Doc. 19 at ¶ 5 (alleging session replay software is "viewed and utilized *by [LMIC]*" (emphasis added); *id.* at ¶ 33 (same); *id.* at ¶ 38 (alleging use of session replay software is for LMIC's "own benefit"); *id.* at ¶ 95 (alleging use of session replay software is for LMIC's "own purposes")). There are no allegations that the third-party software provider used, viewed, or sold the information—or otherwise used the session replay "recordings" for its own benefit whatsoever. Thus, this is not a case where a company allowed a third party to intercept communications for that third party's own purposes. Like in the California decisions, the alleged third-party software providers here are mere extensions of LMIC and not third-party eavesdroppers.

Accordingly, Plaintiff's reliance on LMIC allegedly hiring third-party software providers to implement the session replay software does not save her claims. Simply put, whether LMIC used internal software to record the information Plaintiff communicated to LMIC or it used software provided by a third-party for LMIC's use, the fact remains that Plaintiff consented to the recording of her information for LMIC's use when *she* communicated it to LMIC on LMIC's website. *Proetto*, 771 A.2d at 829 ("By the very act of sending a communication over the Internet, the party expressly consents to the recording of the message.").

## V.    CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiff's Amended Complaint with prejudice.

Dated: February 23, 2023                              Respectfully submitted,


                                                       _/s/ Alyse F. Stach_____

Dante A. Marinucci (*pro hac vice*)                    Alyse F. Stach
**BAKER & HOSTETLER LLP**                              **BAKER & HOSTETLER LLP**
127 Public Square, Ste. 2000                           1735 Market Street, Ste. 3300
Cleveland, OH 44114                                    Philadelphia, PA 19103
Telephone: (216) 621-0200                              Telephone: (215) 568-3100
Facsimile: (216) 696-0740                              Facsimile: (215) 568-3439
dmarinucci@bakerlaw.com                                astach@bakerlaw.com

                                                       Julie Singer Brady (*pro hac vice*)
                                                       Yameel L. Mercado Robles (*pro hac vice*)
                                                       **BAKER & HOSTETLER LLP**
                                                       200 South Orange Avenue, Ste. 2300
                                                       Orlando, FL 32801
                                                       Telephone: (407) 649-4000
                                                       Facsimile: (407) 841-0168
                                                       jsingerbrady@bakerlaw.com
                                                       ymercadorobles@bakerlaw.com


                                                       *Counsel for Defendant Liberty Mutual*
                                                       *Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRITTANY VONBERGEN, et al.,

             Plaintiff,

       v.

LIBERTY MUTUAL INSURANCE COMPANY,

             Defendant.

Civil Action No.: 2:22-CV-04880

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2023, upon consideration of Defendant Liberty Mutual Insurance Company's Motion to Dismiss Plaintiff's Amended Complaint, and for good cause shown, it is hereby **ORDERED** that the motion is **GRANTED**, and Plaintiff's Complaint is dismissed against Liberty Mutual Insurance Company **WITH PREJUDICE**.

_____
Hon. Gene E. K. Pratter

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 23, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Alyse F. Stach*
Alyse F. Stach

*Counsel for Defendant Liberty Mutual Insurance Company*