**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAMER ELSAYED, individually and on behalf of all others similarly situated,** *Plaintiff,* | : | |
| **v.** | : | **CIVIL NO. 22-4880** |
| **LIBERTY MUTUAL INSURANCE COMPANY,** *Defendant.* | : | |

**MEMORANDUM**

**KENNEY, J.** **OCTOBER 20, 2026**

The Court writes for the benefit of the parties and assumes their familiarity with the facts and procedural history of this case. On August 4, 2026, Defendant Liberty Mutual Insurance Company filed a Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF No. 109. Rather than opposing dismissal, on August 25, 2026, Plaintiff filed a Notice of Non-Opposition to Defendant's Motion to Dismiss (the "Non-Opposition"). *See* ECF No. 110. Accordingly, in light of Plaintiff's Non-Opposition, and for the reasons set forth below, the Court will **GRANT** Defendant's Motion (ECF No. 109), and **DISMISS** Plaintiff's Second Amended Complaint (ECF No. 107) **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.[1]

## I. LEGAL STANDARD

The Court must dismiss a case whenever it finds that it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Defendants can challenge subject matter jurisdiction by moving to dismiss a plaintiff's complaint pursuant to Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). When

[1] Because the Court is dismissing Plaintiff's Second Amended Complaint on jurisdictional grounds, the Court need not address the Rule 12(b)(6) component of Defendant's Motion.

deciding a Rule 12(b)(1) motion, a court must first determine whether the movant presents "a factual attack or a facial attack." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack to jurisdiction "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id.* (quoting *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)); *see also Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("A factual attack . . . is an argument that there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction."). In reviewing a factual attack to subject matter jurisdiction, "no presumption of truthfulness attaches to the allegations of the plaintiff[,]" *CNA*, 535 F.3d at 139 (internal quotations and citation omitted), and a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Courts can also "review evidence outside the pleadings" when evaluating a factual attack. *U.S. ex rel Atkinson*, 473 F.3d at 514. Moreover, if a defendant raises a factual attack, the plaintiff bears the "burden of proof that jurisdiction does in fact exist." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotations and citation omitted).

## II. <u>DISCUSSION</u>

In its Rule 12(b)(1) Motion, Defendant asserts a factual attack to the Court's subject matter jurisdiction. *See* ECF No. 109 at 12–23. Specifically, Defendant contends that, in consideration of recent authority from the Third Circuit, Plaintiff does not have Article III standing to maintain his Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") claim because the information that Plaintiff allegedly voluntarily entered on Defendant's website does not consist of "highly sensitive private information." *Id.* at 6; *see also In re BPS Direct, LLC; Cabela's, LLC*

*Wiretapping Litig.*, 175 F.4th 423 (3d Cir. 2026) [hereinafter *In re BPS Direct*]; *Smidga v. Spirit Airlines, Inc.*, No. 24-1757, 2026 WL 1470137 (3d Cir. May 26, 2026); *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025). Accordingly, Defendant argues that Plaintiff has not suffered a concrete injury sufficient to confer standing. ECF No. 109 at 6.

"To establish standing under Article III, a 'plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Cook*, 148 F.4th at 157 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). As relevant here, "[t]o determine the 'concreteness' of intangible injuries," courts assess "'whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms.'" *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021)). In the present case, Plaintiff alleges that his intangible harm is comparable to the common law tort of intrusion upon seclusion. *See* ECF No. 107 ¶¶ 26, 74; *see also* ECF No. 109 at 13 & n.6.

The Third Circuit's recent decisions in *Cook*, *In re BPS Direct*, and *Smidga* are instructive and determinative here. In *Cook*, the plaintiff alleged that the defendant violated WESCA by using session replay code to record her interactions on its website and "aggregate[] the data into a video for the company reenacting the user's visit." 148 F.4th at 156, 159. Although the session replay code captured the plaintiff's "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time[,]" this information plainly "was not sensitive or personal" in nature. *Id.* at 159 (internal quotations and citation omitted). Therefore, the plaintiff's alleged harm was neither "analogous to the harm associated with the tort of disclosure of private information[,]" nor

"to the harm associated with intrusion upon seclusion." *Id.* at 160; *see also In re BPS Direct*, 175 F.4th at 432 ("The absence of any private affairs was the fatal flaw in *GameStop*."). The Third Circuit thus affirmed dismissal of the plaintiff's WESCA claim because she failed to allege a concrete injury. *See Cook*, 148 F.4th at 162.

Similarly, in *In re BPS Direct*, the defendants used session replay code to "capture[] and store[] users' interactions on [their] websites, including mouse movements, text entries, and clicks." 175 F.4th at 427. The eight named plaintiffs were categorized into two groups. *Id.* at 428. Six plaintiffs merely browsed, did not make any purchases, and "did not enter their names, addresses, or any other personally identifying information while on the websites." *Id.* Two of the plaintiffs, however, "made purchases" and "entered [their] name, address, and payment and billing information into text fields.'" *Id.* (internal quotations and citation omitted). With respect to the comparator tort of intrusion upon seclusion, the Third Circuit found that the six plaintiffs who did not enter any "personal or sensitive information" failed to allege a concrete injury. *Id.* at 433. However, the two plaintiffs who "entered their complete credit card or debit card numbers"—i.e., "highly sensitive" information—when making purchases sufficiently alleged a concrete injury and had standing "based on their allegations" that the session replay code allowed third-party providers "to surreptitiously record their billing and payment information absent consent." *Id.* at 433–34.

Finally, in *Smidga*, the plaintiffs likewise alleged that "unbeknownst to website users," the defendant's session replay code "recorded the users' interactions with the website in real time, including text entries, mouse clicks, and geolocation." 2026 WL 1470137, at *1. Relying on *Cook*, the Third Circuit reiterated that the use of session replay code "to collect information about an individual's interactions with its website [does] not constitute an intangible injury[,]" so the two plaintiffs who had failed to input any personal information into the defendant's website did not

allege a concrete injury. *Id.* at *2. While one plaintiff allegedly entered personal information on the defendant's website, such as her name, age, and address, she "voluntarily provided [that] information." *Id.* at *1–2. Moreover, the Third Circuit found that entering that type of personal information was not enough to confer standing because there was no "allegation of resulting embarrassment or humiliation," as required for "the tort of disclosure of private information[,]" and there was no allegation that the defendant "intentionally disturbed [the plaintiff's] private affairs or concerns[,]" as required for the tort of intrusion upon seclusion. *Id.* at *2.

With these principles in mind, the Court finds that Plaintiff falls short of pleading a concrete injury in connection with his WESCA claim. In his Second Amended Complaint, Plaintiff does not allege that he made any purchases or input his credit card or debit card information into Defendant's website. Rather, Plaintiff alleges that he "filled out an online auto insurance quote form specific to Pennsylvania[,]" which required him to input certain "personal information[,]" such as "1) his zip code; 2) name; 3) birthdate; 4) address; 5) how long he had lived at that address; 6) his email[,]" among other information. ECF No. 107 ¶¶ 29–30. The basic personal information that Plaintiff allegedly voluntarily divulged is not the type of "highly sensitive" information that the *In re BPS Direct* Court linked to a concrete injury. 175 F.4th at 443; *see also Smidga*, 2026 WL 1470137, at *1–2 (finding that a plaintiff failed to allege a concrete injury where she "voluntarily" input "the names, addresses, and ages of herself and her children" when purchasing flights on the defendant's website). In addition, Plaintiff does not allege that there was any public dissemination of the information that he provided to Defendant resulting in "embarrassment or humiliation" to him, nor does Plaintiff allege that Defendant "intentionally disturbed [his] private affairs or concerns." *See id.* at *2; *see also Cook*, 148 F.4th at 160 ("[M]ost of us understand that what we do on the Internet is not completely private." (internal quotations and citation omitted));

*In re BPS Direct*, 175 F.4th at 432 ("When the harm is based on an intrusion into a plaintiff's affairs, those affairs must (at least plausibly) be private."). Finally, to the extent that Plaintiff complains that Defendant was recording his mouse clicks and keystrokes on its website, *see, e.g.*, ECF No. 107 ¶¶ 4, 33, 44, he fails to allege a concrete injury based on the recording of those types of actions in light of the Third Circuit's decisions in *Cook* and *In re BPS Direct*. *See Cook*, 148 F.4th at 159–160; *In re BPS Direct*, 175 F.4th at 430, 433.

For these reasons, Plaintiff does not allege a concrete injury sufficient to confer standing. Accordingly, the Court will grant Defendant's Motion (ECF No. 109), and dismiss Plaintiff's Second Amended Complaint (ECF No. 107) without prejudice for lack of subject matter jurisdiction. *See Cook*, 148 F.4th at 163 (explaining that the "general rule" is that "a dismissal for lack of Article III standing must be without prejudice" (internal quotations and citation omitted)); *In re BPS Direct*, 175 F.4th at 434 (same); *Smidga*, 2026 WL 1470137, at *3 (same).

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion (ECF No. 109), and dismiss Plaintiff's Second Amended Complaint (ECF No. 107) without prejudice for lack of subject matter jurisdiction. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**